## W. J. MEYERS v. THE STATE.

No. 11584. Delivered October 24, 1928.
Rehearing denied January 1, 1930.

The opinion states the case.

*Tipps and Puckitt* of Dallas, for appellant.

*Wm. McCraw*, District Attorney, *W. L. Curtis* and *Andrew J. Priest,* Assistant District Attorney, all of Dallas, and *A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is embezzlement, a felony; the punishment confinement in the penitentiary for two years.

The recognizance is conditioned that "the said W. J. Meyers, who stands charged with the offense of embezzlement in this court, and who has been convicted of the offense of embezzlement in this court, shall appear before this court from day to day," etc.

The form for recognizances in appeals from convictions for felonies set forth in Article 817 C. C. P. 1925 is as follows:

"This day came into open court A. B. defendant in the above entitled cause, who, together with C. D. and E. F. sureties, acknowledged themselves severally indebted to the State of Texas in the sum of $........, conditioned that the said A. B., who has been convicted of a felony in this court, as more fully appears by the judgment of conviction duly entered in this cause, shall appear before this court from day to day and from term to term of the same, and not depart therefrom without leave of this court, in order to abide the judgment of the Court of Criminal Appeals of the State of Texas."

It is noted that Article 817, supra, prescribes that it shall be shown in the recognizance that the accused has been convicted of a felony. Article 831, C. C. P., relative to the form of the recognizance in an appeal in a misdemeanor case, provides that it be shown in the recognizance that the accused has been convicted of a misdemeanor. In Ayres v. State, 254 S. W. 981, this court held that such requirement must be complied with, and dismissed the appeal in that case because it was not shown in the recognizance that the accused had been convicted of a misdemeanor.

The statement in the recognizance in the instant case that appellant had been convicted of embezzlement does not show that he has been convicted of a felony. The punishment prescribed for embezzlement is the same as that prescribed for theft. Article 1534 P. C. Theft of property of the value of fifty dollars or over is punishable as a felony, while theft of property under the value of fifty dollars is punishable as a misdemeanor. Articles 1421 and

1422, P. C. 1925. Hence the statement that appellant had been convicted of embezzlement is not sufficient to indicate whether the offense of which he was convicted was a felony or misdemeanor. Article 817, C. C. P., embodies in the form of the recognizance prescribed reference to the judgment of conviction for a determination of the name of the offense. No such reference is made in the instant recognizance. The recognizance failing to show that appellant was convicted of a felony is insufficient. Ayres v. State, supra.

Where the appellant is enlarged the Court of Criminal Appeals is without jurisdiction in the absence of a proper recognizance or appeal bond. Reed v. State, 267 S. W. 271.

The appeal is dismissed.

*Dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

LATTIMORE, JUDGE.—The appeal was dismissed at a former term on account of the fact that the recognizance was defective. A sufficient recognizance having been supplied, the appeal is reinstated.

Upon a more careful consideration of this record we have concluded to withdraw the opinion filed herein on June 20, 1928, and to substitute therefor the following:

The conviction was for embezzlement; punishment fixed at two years confinement in the penitentiary.

From the count of the indictment which was submitted by the trial court it is manifest that the conviction was for the embezzlement of $88.00. Guilt was predicated on the proposition of fact that a check for $88.00,—the property of Baylor University,—had come into appellant's hands by virtue of his employment, and that cash money of that amount, also came, on October 29, 1926, into his hands in the same way, and that he abstracted and appropriated the $88.00 in money and substituted therefor the $88.00 check so that the books, deposits, etc., on said date would balance and correspond. It was proven that some time between October 26th, the date of issuance, and October 30th, the date of deposit, the said check came into appellant's hands, but such proof was by the circumstance only of the endorsement of said check in appellant's handwriting. Said check was part of deposits made by some one for Baylor on October 30, 1926, totaling $727.49. This total was made up of two deposits, one in the American Exchange Bank

of $389.10, the deposit slip being itemized and showing to have been made up entirely of checks; another deposit was in the North Texas Bank of $338.39, also itemized and all of it being checks except $12.87, which was money. Other employees of Baylor University testified that on October 29, 1926, actual money was received in the office where they worked and of which appellant was manager, amounting to from $106.65, as sworn by two witnesses, to $160.65, as sworn by another, the difference not affecting our decision. As stated above, the State's theory of this case was that appellant had received an $88.00 check, and that he made up the deposit slips on October 30th, putting thereon the said check in lieu of $88.00 of the money taken in on said October 29th, which said $88.00 in money he kept. No witness testified that the money taken in on October 29th was delivered to appellant. No one swore that he or she gave the receipts for that day to appellant. It was not shown by comparison or otherwise that the deposit slips made on the morning of October 30th, and containing the receipts of the day preceding, were in appellant's writing or made out by him, nor was it shown that he made the deposits on October 30th. The only testimony aside from the fact that appellant sometimes made the deposits, and that he was the manager of the office, and that the endorsement on the check in question was in his handwriting, was a confession made by appellant which, in most general terms, admitted that covering a period of years he had appropriated about $3,000.00 belonging to Baylor University, and stated that his method was to take out cash received and substitute checks therefor in making deposits, thus making the receipt books and deposits balance. Not a word in the confession referred to the transaction involving the $88.00 check in question or the $88.00 in money, or any other particular transaction; nor was there any admission in said confession that he took any money on October 29, 1926, or on any other specific date. It appears obvious that this appropriation of the particular $88.00 in money on the date mentioned must have been proved by testimony direct or by circumstances sufficiently strong to make evident his guilt, and to exclude all reasonable probability that another and not appellant committed the crime, if any.

Let us briefly review the testimony. All the witnesses who were employees of the University said that a receipt book was kept in which was entered correctly the receipts for each day, and one testified that the receipts issued were serially numbered, and another

testified that the receipts of each day formed the deposits of the succeeding day. As showing the receipts for October 29, 1926, the part of the receipt book reflecting the receipts for that day was introduced in evidence. It shows twenty-seven receipts serially numbered from 14491 to 14517 inclusive, for checks and money totaling $578.17. Neither the book nor the witnesses who testified about it make clear how much was cash and how much was checks received on that day. The deposits of October 30th were $727.49, which included an $88.00 check not shown on the receipt book among the receipts of October 29th. In fact, comparing the receipt book in evidence for October 29th with the itemized deposit slips of October 30th, also in evidence, we note that in addition to the $88.00 check referred to, there appear twenty-one other checks on the deposit slips, most of which are for small amounts, and which other checks aggregate $227.60, and taken with the $88.00 check mentioned showed a total of $315.60 as deposited on October 30th, none of which showed on the receipt book to have been received October 29th. There seems to have been a cash book kept in the office of the University, which is referred to by witness Boyle, but was not offered in evidence. All the witnesses who worked in the office swore that from the cash received on any day, checks might be cashed by employees, nurses, doctors or patients, none of which transactions would be entered on the receipt book, and that in making up the next day's deposits, checks of this character would appear on the deposit slips as checks and not as cash. All the witnesses said that only small checks of employees, patients, etc., would be cashed out of the cash receipts of the office.

We have then this state of case shown by this record: The deposit slip of Baylor in the American Exchange Bank for October 30th shows thirteen checks each for less than $25.00, aggregating $80.10, not one of which appears on the receipt book showing the receipts for October 29th; also on said deposit slips appear two checks, one for $88.00 and the other for $76.50, neither of which appears on said receipt book of October 29th. On the deposit slip of the North Texas Bank for October 30th there appear six checks, each for less than $25.00, not listed on the receipt book of October 29th, said checks aggregating $42.50; also one check for $29.52 not shown on receipt book for October 29th. We may also here call attention to the fact that the North Texas Bank deposit slip showed $12.87 in money as deposited on October 30th. It seems too plain for argument that it would be impossible for the appellant to substitute

checks totaling $315.60 and take that amount of money out of the receipts and appropriate it, when the total cash receipts for that day, as testified to by two witnesses, was only $106.65. We might further observe that it would appear entirely reasonable that the nineteen small checks, not shown on the receipt book of date October 29th, but deposited by some one for the University on the 30th and shown on the deposit slips to be checks and not cash, might have gotten into the money drawer as the result of cashing small checks for employees, patients, etc., in accordance with the usual custom of the institution, and these would have absorbed the cash received on the 29th. In other words, the proof goes no further than to show that of the $106.65 cash received October 29th, only $12.87 was deposited, leaving the inference that the other $93.78 was paid out to some one, or taken by some one. Granting that the custom was established on the part of the management of the office, to cash small checks out of cash receipts, and that such checks would merely be put in as checks in making up deposit slips the next day, and would not appear on the books; and admitting that the deposit slips of October 30th show small checks aggregating $122.60, none of which appear from the receipt book to have been taken in on October 29th; also that three other checks aggregating $194.02 appear on the deposit slips of October 30th, not shown to have been received October 29th, such facts leave room for so much doubt that we are unwilling to allow this conviction to stand. Possibly upon another trial some of the matters may be cleared up. In passing, we might observe that the case was purely on circumstantial evidence, and the law of such issue should have been given in the charge.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—The State has filed a motion for rehearing which was argued orally in such convincing manner as to challenge our attention. The State concedes that the case depends on the establishment of three issues; first, that appellant received the check for $88 issued by the Security Union Insurance Company of Houston to cover the account of a patient by the name of McKay; second, that on October 30th, 1926, Baylor University (Hospital) was short an amount of cash equal to the face of said check; third, that appellant took $88, the equivalent of the check in cash from the

funds belonging to such institution and substituted the check for $88 in its place and converted the money to his own use.

There is no question but that the check reached the hospital. If it had followed the regular course it would have gone to the cashier and a receipt would have issued covering the check and the patient's account would have been credited with the amount. No receipt ever issued. The cashier testified that she never saw the check in question. However, it found its way to the bank on October 30th as a deposit to the credit of the hospital, bearing an indorsement in appellant's handwriting. The card of the patient McKay disappeared and could never be found. There seems no room for doubt that appellant handled the check. No other employee of the institution was ever shown to have seen it. To the writer's mind no difficulty is found in determining the first issue in favor of the state.

On October 30th, 1926, was Baylor University (Hospital) short in cash, and if so, how much? Was it enough to cover the amount of the check? Under the bookkeeping system employed any cash or check paid to the cashier was evidenced by a triplicate receipt, one copy of which remained in the receipt book. These receipts were supposed to show whether the sum covered was cash or check but they did not always do so. The deposits in the bank for any particular day was supposed to reflect the receipts of the previous day as shown by the receipt book kept by the cashier and the cash book kept by the bookkeeper. The amounts deposited in the bank on October 30th aggregated the sum of $727.49, of this amount $578.17 was shown by the receipt book, the balance presumably being shown on the cash book, but not appearing in the receipt book. The cash book was not put in evidence. An absence from the record of the items shown thereon may account for much of the confusion in our own mind in attempting to reach a correct disposition of the case. The main thing, however, is to arrive at the cash on hand on October 29th. The bookkeeper testified that to get at the *actual cash* taken in on October 29th he would go to the receipt book, leaving the inference that items on the cash book reflected other than cash transactions and therefore leaving the items on the cash book not as important as might at first appear. The receipt book is in evidence. Some of the items show cash received, others checks received, while some show only the amounts received, being blank as to whether they represent cash or checks. The items shown on their face to have been cash aggregate $69.60. The items left blank and which may represent either cash or checks aggregate $126.30,

and to ascertain about them resort must be had to the witnesses. Upon that point Mrs. Reese, the cashier, testified:

"On the 29th day of October, 1926, $160.65 cash was received on that day. I don't know what the total amounts of receipts of cash and checks were. * * * We have a record of $160.65 being taken in in cash on October 29th. That record is down here. I did not make that record in person or give receipts for all that money. I gave them during the day and when the night man came on he made his. Here is where the night man came on,—one, two, three—he just wrote three receipts and all three of them were checks, none of his receipts were cash. When I left there all the cash that had been taken in that day had been receipted for by me. That cash was put in the cash drawer and the checks that were taken in while I was there were put in that same drawer. The deposit slip would be made up from the total amount in that book on the 29th. There was so much cash and so much checks."

Mr. Boyles, the bookkeeper testified:

"The total cash receipts on October 29, 1926, was $727.49. I have gone through the receipt book to see how much of that was actually cash received that day. $106.65 that I can verify was cash that day."

On cross-examination the witness was evidently handed the receipt book and he picked out three items, $9.05, $22.50 and $4.00, aggregating $35.55, which he testified positively were actual cash items, although not so shown on the receipt book, which added to the $69.60 shown by the book itself to represent cash, would make $105.15. As to the other items silent on the book as to whether they were cash or checks he said he did not know. It must be remembered, however, that Mrs. Reese, the cashier who kept the receipt book, testified positively that the receipts for October 29th actually represented $160.65 in cash. When the deposits were made in the bank on October 30th only $12.87 in cash was accounted for. What became of the balance of the money? It was shown that checks were sometimes cashed by the cashier for employees and patients which would of course absorb the money to the amount of the checks so cashed, but what about the particular day in question, October 29th? Mrs. Reese testified:

"I do not remember cashing a check that day. Sometimes I cashed checks but I never cashed a check over $10.00. I do not remember cashing any that day. I do not know whether Mrs.

Storey cashed any. Miss Danner didn't cash them—not out of my cash."

It is evident that Mrs. Storey cashed no checks on October 29th for the record shows that she was not at the hospital on that date.

Mr. Boyles, the bookkeeper, testified to some apparent changes in the receipt book as to items from cash to checks and vice versa, the significance of which is not apparent to us. Mrs. Reese, the one in charge of the book, testified positively that she made no changes in it. When the face of the books and the face of the bank deposit slips are taken many discrepancies are found which can not be reconciled, as pointed out in our original opinion. For instance, items are listed on the receipt book as checks and no corresponding item of such checks are found on the deposit slips; likewise, items are listed on the deposit slips as checks which are not found in the receipt book. Under the state's theory of the case this was to be expected as to the $88 check which was claimed to have been substituted in the deposit in lieu of cash equivalent taken out of the funds. The figures which have confused us were before the jury who must have experienced the same difficulty in dealing with them as we have. Notwithstanding the discrepancies mentioned we have after a careful re-examination of the record reached the conclusion that the jury was warranted in accepting the testimony of Boyles and Mrs. Reese as to the actual cash on hand, they being the only witnesses having any acquaintance with the books. Having reached such conclusion it is clear that we would be unauthorized to set aside a verdict which reflected a finding by the jury that $88 in money was taken from the funds and a check for that amount substituted in its stead.

Did appellant get the $88 in money? He did not testify upon the trial but his written and verbal statements made to others are in the record. There was no direct admission by him as to connection with the particular $88 transaction, but his general method of peculation is admitted. Here is his written statement.

"I hereby confess that I have taken funds from the Baylor University Hospital Department during the last year and a half of my connections as Business Manager. I have failed to keep any record whatsoever covering these shortages and unable to state the exact amount. I have, with my wife, gone over our financies during the last two years and there is, to our belief, a discrepancy of about Three Thousand ($3,000.00) Dollars. This is only an approximate, how much more I would not undertake to say. The approxi-

mation is only a rough calculation, based on my expenditures and salary in the last two years. I wish to deny that I have ever taken, directly or indirectly, one cent from the professional schools. I have never taken a patient's remittance from the Hospital during my connection there. My transactions were with insurance companies doing business with Baylor Hospital. Ninety-five per cent (95%) of the money taken was where I would substitute checks of the Texas Employers Insurance Association. These monies were taken during the absence of Miss Danner, while I made up her deposits for her. Checks were substituted for cash received the day before, which cash was taken by me. To destroy evidence of payments made, the record cards were torn up by me. My reason for taking insurance money rather than patients' checks, was to conceal the misappropriation, since there was a liklihood of some patient's check being returned from the bank unhonored, either by incorrect signature, insufficient funds, etc. Had one of these checks been returned, I would have been detected in this manner some time ago. All the foregoing statements are true to the best of my knowledge and belief, and are made voluntarily by me. These statements are also made without any promises made by anybody, whatsoever, of any leniency to be shown me for the acts that I have committed. Due to my long connection with Baylor University, I ask the Trustees to show mercy, if possible, for the acts that I have committed."

Here follows appellant's statement to witness Collins:

"Meyers didn't tell me anything about the way he handled any particular check; he told me what his plan was with reference to these checks. He said that when the checks he took came into the hospital in the mail he would take the check and put it in his pocket until some convenient opportunity came for him to take the hospital's cash which was going to the bank and put in this particular check that he had in the drawer and take out an equal amount of cash. He told me that when he put in an insurance company check that was going to be deposited he would take out an equal amount of cash out of the hospital's cash."

Having in mind the foregoing statements and reverting to the present case we find the facts indicate appellant's general course of peculation was followed in this instance. The $88 check did go into appellant's hands for it was indorsed by him in person. It never went to the cashier in order that receipt might issue in the ordinary course of business and it be passed to the credit of McKay's account which the check was intended to cover. Mc-

Kay's card disappeared and could never be found. In describing his method appellant said "to destroy evidence of the payments made the record cards were torn up by me." He avoided any misappropriation of patients' individual checks for fear of detection. Checks of insurance companies were his specialty. The $88 check was this kind. We think under all the facts the jury was justified in reaching the conclusion that appellant carried out his general scheme in handling the $88 check in question and abstracted that much money and substituted the check in its place.

Having reached the conclusion that we were in error in having reversed the judgment it is proper to discuss other questions raised by appellant. There were two counts in the indictment, the first only being submitted. In a motion to quash the indictment appellant criticized the second count in several particulars and takes the position that if the second count should be held invalid the indictment then failed to conclude "against the peace and dignity of the state." Appellant's position is not tenable. The indictment as a whole concludes "against the peace and dignity of the state." Polk v. State, 275 S. W. 1003.

Bill of exception number one deals with the action of the court in overruling appellant's application for continuance which was predicated on the ground that appellant's attorneys had been hampered in properly representing him because of the fact that they had just been engaged in the prosecution of another case. It appears from the court's qualification to the bill that the attorney's actively represented appellant throughout every stage of the trial and there was no evidence that they were hampered in their representation, but on the contrary, it appears that they represented him in a most admirable and capable manner. As thus qualified the bill does not present error.

There appears in the record purported objections to the court's charge. They bear no authentication whatever of the trial judge. In such condition they can not be considered. Cantu v. State, 276 S. W. 433. We note that one of these exceptions complains at the omission to charge on circumstantial evidence and if the record was in such condition as to show that the objection to the charge was properly called to the court's attention, it might present a somewhat serious question. We assume that the learned trial judge declined to charge on circumstantial evidence on account of appellant's confession, but that confession not being a direct admission

of guilt to the particular transaction under investigation, would as indicated in our original opinion have called for a charge 'on circumstantial evidence had complaint of its omission been properly presented. The court gave the following special charge at appellant's request.

"You are instructed as a part of the law in this case that the law presumes the defendant to be innocent until the State has proven the truth of every material allegation set out in the indictment beyond every reasonable doubt and to the exclusion of every other reasonable doubt except that of the guilt of the defendant, 'and if from the evidence or lack of evidence you believe the State has failed to do this or if you have a reasonable doubt whether or not the State has proven his guilt beyond a reasonable doubt, then it will be your duty to say by your verdict, 'We, the jury find the defendant NOT GUILTY.' "

The failure to charge on circumstantial evidence will not demand a reversal of the case in the absence of exceptions to the court's charge because of its omission called in a timely manner to the attention of the trial judge, or in the absence of a special charge upon the subject designed to supplement the omission from the general charge. The complaint of the omission must be called to the judge's attention in one way or the other. Givens v. State, 98 Tex. Cr. R. 651, 267 S. W. 725.

By bill of exception number three appellant complains of the action of the court in permitting the state to introduce in evidence the charter of Baylor University. The charter is not set out in the bill nor is the part objected to set forth and in this respect the bill of exception is incomplete. Buchanan v. State, 298 S. W. 569; Branch's Ann. Tex. P. C., sec. 207, page 131.

Appellant complains in bill of exception number four of the action of the court in admitting in evidence appellant's written statement, the ground of objection being that the statement shed no light on the transaction under consideration, but involved other separate and distinct offenses. This bill fails to incorporate in it the statement to which objection was urged and in this respect is incomplete in the same particular as was bill of exception number three.

By bill number five appellant complains of the action of the court in permitting a witness for the state to return to the witness stand after both sides had closed and before the argument had begun and state to the jury that he had advised appellant's wife in the absence

of appellant that she did not need a lawyer. The bill of exception is qualified as follows:

"The defendant had asked the witness Thomas if he had advised the wife of defendant not to employ counsel and the witness was merely answering the question."

The qualification shows the bill to be without merit.

The state's motion for rehearing is granted, the judgment of reversal is set aside and the judgment is now affirmed.

*Affirmed.*

### DISSENTING OPINION.

LATTIMORE, JUDGE.—I can not assent to the sending of any citizen of Texas to the penitentiary on testimony which to my mind is so wholly fragmentary, disconnected and lacking in convincing facts, as appears in this record. I recognize that when a man admits that he has been guilty of taking a large sum, it does not take as much to bring about his conviction, as when charged with taking in a particular case a smaller sum. Aside from the fact that appellant's handwriting appears in the endorsement of an $88.00 check which is circumstantially shown to have come into his possession, and that he had admitted in the most general terms that during a period extending over two years he had taken some $3,000.00, there is to my mind not a cogent fact in this record justifying his conviction for embezzling $88.00 in money from the funds of the institution for which he worked. In order to make out its case the State had to prove beyond a reasonable doubt that out of the cash received by Baylor Hospital and University at Dallas on October 29, 1926, appellant took $88.00 in money. That he did so was not only not proved, in my opinion, but wholly disproved.

Mrs. Reese, cashier for said institution, swore: "We have a record of $160.65 being taken in in cash October 29th. That record is here. I didn't make that record in person or give receipts for all that money." Boyles, bookkeeper for said institution, swore: "I have gone through the receipt book to see how much of that was actually cash received that day; $106.65 that I can verify was cash that date. * * * I say there was $106.65 cash. I got that from the receipt book." These witnesses were testifying in September, 1927, to the occurrences of an ordinary day's business transacted a year before, and necessarily had to testify to what the books showed, and neither of them undertakes to relate as personally remembered, one single thing that occurred on that date. The page

of the receipt book bearing date October 29, 1926, which furnished these witnesses the basis for their testimony, was itself put in evidence. Same showed that the receipts were serially numbered. At the top of said page were three columns,—one for the number of the receipt issued, another for the amount thereof, and the third to show whether the receipt was for cash money taken in, or for checks received. This page is copied in the record on appeal and shows in the third column referred to an aggregate of cash items received that day totaling $69.60,—eight items aggregating $117.30, with no entry indicating whether same were checks or cash, fourteen entries showing receipt of checks. The attempt of Mrs. Reese and Mr. Boyles to explain these items in their testimony resulted in hopeless confusion. For instance, Boyles swore of a $9.05 item which appears on the receipt book as "Ck" that it was cash because the medical college always paid cash. Of another item he said: "That is another cash item; it was originally 'Ck' and has been written over the top 'cash,'—looks like they might have started to make it 'Check.'" Of another item he says: "That one is a check item; it looks like, I can't be sure what it is. *I made up my record from this, that I am testifying against Meyers on.*" It seems to the writer intolerable that any human being should be convicted of a felony on such testimony.

There is another matter worthy of mention. The deposit slips showing the income of the institution on October 29, 1926, were in evidence and are in the record. Same showed two checks as deposited among receipts of that day which were not on the receipt book, viz.: one for $88.00 and another for $76.00. Neither of these checks appearing in the receipt book as coming in on the 29th, the inference of the State would appear to be that they both represented checks theretofore received by appellant and held out by him until the cash amounted to enough to put them in and take out a corresponding amount of cash. Said deposit slips for that day show cash deposited $12.87. It would seem useless to argue that whether the cash taken in that day was $106.65 or $160.65, same could not be enough to take up the two checks referred to much less leave $12.87 in cash. It also appears equally sure that whether the cash collected was $160.65 or $106.65, that the holding out of $88.00 of it by appellant could not leave the $12.87 cash which was deposited.

But the insuperable obstacle to the conclusion that this record shows appellant to have taken in cash from the funds of this in-

stitution on October 29th as much as $88.00 is found in the bank deposit slips which, according to all the witnesses, represented the income of said day. These deposit slips show beyond question the items forming same which are cash and which are checks. Said deposit slips list eighteen small checks as having been taken in on the 29th aggregating $115.60, not one of which appears on the page of the receipt book above referred to, which Mrs. Reese and Mr. Boyles swear shows the business of October 29th. Where did these checks come from? What did they represent? The answer seems plain. Out of the hopeless confusion of this record we find all witnesses agreeing that it was the custom of these people to cash for employees, patients, doctors and others in whom they had confidence, small checks whenever requested, and that in every case where such checks were cashed no entry was made on the books, but such check would be deposited as a check item and not as cash. It was the custom of the institution to list on its receipt book all collections whether check or cash, no matter how small or large. None of these eighteen checks appearing to have been received on that day, and all of them appearing to have been deposited as received on that day, the conclusion seems irresistible that they represented small items of cash advanced upon checks to patients, etc. The only thing in the record in anywise rebutting this conclusion is found in the testimony of Mrs. Reese who says: "I do not remember cashing any checks that day." In view of the fact that she was speaking of a day's occurrences a year after said day, and that the matters were those occurring in the ordinary course of an uneventful day with nothing to fix them in her mind, it seems to the writer that the fact that she said she did not remember cashing any checks on that day is not entitled to the slightest weight as rebutting the unanswerable fact of the presence of these small checks and their deposit as part of the receipts of that day. Certainly a man's liberty should not be taken upon testimony of such flimsy character. The State is compelled to ask that we overlook the presence of these eighteen checks of sufficient amount to absorb $115.00 of the cash, and that we presume against these facts that somewhere, somehow appellant found enough cash to enable him to take out $88.00 in money and put in a check for $88.00.

If my Brethren adhere to such conclusion I must respectfully enter my dissent.

ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—Without engaging in any additional rehearsal of the facts which have been recited in the previous opinion of the court, to the mind of the writer, the appellant's motion for rehearing presents no adequate ground upon which a reversal of the judgment should be ordered.   We are therefore constrained to adhere to the statement of the case and the legal conclusion set forth in the judgment of the court rendered June 26, 1929, and to overrule the appellant's motion for rehearing.

*Overruled.*

HAWKINS, J., absent.