R. L. HENDRICKS V. THE STATE.

No. 15197.   Delivered June 15, 1932.
Appeal Reinstated November 2, 1932.
Rehearing Denied January 11, 1933.
Reported in 55 S. W. (2d) 839.

The opinion states the case.

*Baskett & De Lee,* of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is embezzlement; the punishment, confinement in the penitentiary for six years.

The recognizance recites that appellant "stands charged with the offense of embezzlement of $50.00 or over," but fails to show that appellant has been convicted. It is necessary that the recognizance or appeal bond show that the appellant has been convicted. Article 817, C. C. P.; Wilmering v. State, 100 Texas Crim. Rep., 169, 272 S. W., 463; Wall v. State, 110 Texas Crim. Rep., 116, 7 S. W. (2d) 958. Appellant being enlarged under a defective recognizance, this court is without jurisdiction. Rhea v. State, 101 Texas Crim. Rep., 298, 275 S. W., 1021; Wall v. State, supra.

The appeal is dismissed.

*Dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION TO REINSTATE APPEAL.

LATTIMORE, JUDGE.—At a former term of this court this appeal was dismissed because of a defective recognizance. This defect having been remedied, the case will be considered on its merits.

A statement of all the facts in this case would be of interest, but no more of them will appear than is deemed necessary to make plain the reasons for our opinion. Mrs. Bielman was the injured party, and will be referred to herein as Mrs. B. Her husband had been killed in an accident. Appellant himself testified that he was at the time an adjuster, and went to see Mrs. B about the matter of her claim against the railway company, and took her to a lawyer who filed suit, after having been given by her a contract to pay him one-third of the amount recovered. She testified that she turned her claim over to appellant for him to collect same. Appellant said he was actively engaged for months in working on the case. This accords with all the testimony. Shortly before the matter was settled, the attorney first engaged was discharged, and another contract was made and signed by Mrs. B with a different attorney, agreeing to give him one-third of the amount recovered. The case was settled without trial. The railway company paid $2,500; same being

in the form of a draft payable to Mrs. B and the second attorney referred to. Appellant was present when this draft was delivered, and it was given to him by the attorney for the railway company. Appellant went with Mrs. B to a bank. The draft had been endorsed by the attorney and Mrs. B, and, upon presentation of same by appellant to the bank, the $2,500 called for therein was paid to appellant. He put one-third of it in one pocket and the other two-thirds in another pocket. He and Mrs. B then went to the office of a building and loan company, the methods and manner of whose business had been previously investigated by appellant. At the office of this concern appellant purchased three stock certificates of $500 each and received also a pass book showing a deposit of $166.67. The three stock certificates and the pass book were made out to "R. L. Hendricks, Agent." There were no dealings and no conversation between Mrs. B and the officers of the building and loan company. This transaction was in January, 1931. In April following appellant cashed the three stock certificates and the pass book deposit, getting $1,690 plus some cents. This money he appropriated to his own use, according to his own testimony. Between the time of the settlement of the claim and the return of the indictment herein, appellant had paid to Mrs. B at different times sums amounting to about $200. He was indicted for embezzling $1,473.39, the property of Mrs. B.

While on the witness stand appellant was asked on cross-examination, as appears from bill of exception No. 1, where this money was, and whether he was trying to keep it hid where Mrs. B could not get her hands on it. Objection being overruled, appellant replied that he had used some of it, and some he had not. He was then asked how much of it he had, and, objection to this being overruled, replied that he had about twelve or thirteen hundred dollars that he could get hold of that day. Appellant cites no authority in support of his contention that the admission of this testimony was erroneous and hurtful. The State's claim being that of a wrongful conversion of this money by appellant, we can not say they had no right to trace the money, if they could, and to try to find out where it was or to what use appellant had put same; nor can we find reason for believing appellant could be improperly hurt by proof that he had used or invested part of said money in his business and had the remainder. If the jury believed the transaction a loan, as contended by appellant, such use of the money would have been proper.

Appellant asked a peremptory instruction for acquittal and

another special charge which was tantamount to a peremptory instruction in his favor. We believe the applicable parts of this last mentioned charge were given in other special charges hereafter noted.

In special charge No. 3, given by the court, the jury were told that, unless the money in question came into the possession of appellant by virtue of his being the agent of Mrs. B, and that it was his duty by reason of such agency, to receive such money, then its receipt and conversion by appellant would not be embezzlement. In the same charge the jury were further told that if they found from the evidence, or had a reasonable doubt thereof, that it was not appellant's duty to cash the draft mentioned in this case, then they should acquit him. Also in same they were further told that, even though they found that appellant cashed the draft, obtained the money, and converted same to his own use, if they further found from the evidence, or had a reasonable doubt thereof, that in so doing he went beyond the scope of his employment, then said money did not come into his possession by reason of his agency, and he should be found not guilty.

In special charge No. 4, also given, the jury were told that if appellant got the money in question from Mrs. B as a loan, he would have the right to use it as he pleased, and such acquisition would not be embezzlement; also that, in order to make the transaction a loan, it was not necessary that any promissory note or other written instrument be given, but the transaction might be entirely oral. The jury were also told in this charge that, if Mrs. B delivered said money to appellant, or permitted him to retain it as a loan to be used in his business and be repaid at some future date, it would not be embezzlement even though he had not repaid same and did not intend to repay it when he got it, and in any such case the jury should acquit appellant.

As we understand this record, these charges so given covered affirmatively, as well as in a negative way, every issue raised by the testimony. The jury having decided each of these issues against appellant, the only question left to us is that of the sufficiency of the testimony. Without stating our views on this matter as strongly as the testimony would seem to warrant, we are of opinion that the testimony supports the conclusion reached by the jury.

The judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant urges on rehearing as he did on original submission that if guilty of any offense it was theft by conversion, and not embezzlement. We are unable to agree with such contention. There is no question but that appellant was Mrs. Bielman's agent in affecting a settlement of her claim for damages against the railroad. When the draft in payment of such damages was cashed, both appellant and Mrs. Bielman were present, and the money was turned over to appellant. Apparently he put his part of the money in one pocket and her part in another. He did not hand it over to her, but accompanied by her went to the office of a building and loan company where he purchased three stock certificates of $500 each and received a pass book showing a deposit of $166.67. He had the certificates issued in his name as "agent" and made the deposit and took the pass book therefor in his name as "agent." In this transaction he acknowledged that he was acting as "agent" for Mrs. Bielman. He could have been acting in that capacity for no one else. When would this agency cease? By his act in taking the certificates and deposit in his name as "agent" he made it possible in the same capacity to cash the certificates and withdraw the proceeds. Certainly so far as the embezzlement statute is concerned he could not terminate his agency by converting the proceeds to his own use without his principal's consent. If such were true there would never be an embezzlement. Certain affidavits are attached to appellant's motion for rehearing which we are asked to regard as a part of the application for writ of coram nobis. Such proceeding has not been recognized in this state as having application to criminal cases. Ex parte Minor, 115 Texas Crim. Rep., 634, 27 S. W. (2d) 805; McKenzie v. State, 115 Texas Crim. Rep., 315, 29 S. W. (2d) 771. It is not necessary to discuss other questions suggested in the motion for rehearing.

The motion for rehearing is overruled.

*Overruled.*