BANKS STOCKS v. THE STATE.

No. 22608. Delivered November 24, 1943.
Rehearing Denied March 29, 1944.
Application for Leave to File Second Motion for Rehearing Denied
(Without Written Opinion) April 19, 1944.

HAWKINS, Presiding Judge, (dissenting on motion for re-hearing).

The opinion states the case.

*Eugene F. Mathis,* of Lubbock, and *Mathis & Caldwell,* of Wichita Falls, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is embezzlement of property over the value of $50.00. The punishment assessed is confinement in the state penitentiary for a period of two years.

The indictment in this case contains two counts, the first of which charges that appellant was an agent and employee of the Western Hereford Exchange, an incorporated company, and as such agent he did, in Lubbock County, Texas, unlawfully and fraudulently embezzle, misapply and convert to his own use, without the consent of said incorporated company, eighty-one head of cattle of the value of $3,091.29, which said property had come into his possession by virtue of his agency and employment. The second count charges him with being the agent of Harry F. Stream and Forrest M. Larmer, a co-partnership, and that he did, in Lubbock County, Texas, unlawfully and fraudulently embezzle and convert to his own use, without the consent of Harry F. Stream and Forrest M. Larmer, forty head of cattle of the value of $1,465.07, which property had come into his possession by virtue of his agency and employment, etc.

The court submitted the case to the jury only on the first count.

Appellant, in due time, addressed a number of objections to the court's charge, specifically pointing out what he conceived to be error, but the court declined to amend his charge to meet the objections. He also requested certain special charges, some of which the court gave and some he declined to submit to the jury. These matters are the subjects of appellant's complaints, which he has brought forward by proper bills of exception.

Appellant's first complaint relates to the court's action in failing to instruct the jury upon the law of circumstantial evidence. If the State's case rested upon circumstantial evidence,

then he was entitled to such an instruction; otherwise he was not. In order to decide this question, we must look to the statement of facts to determine whether the proof brings it within the realm of circumstantial evidence. The State, by direct evidence, proved the following facts: (a) That appellant, at the time in question, was the agent and employee of the Western Hereford Exchange, a corporation, with its principal place of business at Muscatine, Iowa; (b) that he was authorized to buy cattle for the corporation and to draw drafts on it with bills of sale attached; (c) that on or about the 24th day of October, 1940, he purchased from Blackwell & Brantner, for his principal (the corporation), eighty-one head of mixed calves for the sum of $3,091.25; (d) that he drew a draft on the Western Herford Exchange in said sum with bill of sale attached and by virtue of said transaction came into the possession of said cattle; (e) that on or about said date he engaged C. R. Kelly (Sheriff of Kent County) to haul the cattle to Lubbock. (Mr. Kelly further testified that he was under the impression that appellant instructed him to deliver the cattle to the Lubbock Auction & Commission Company); (f) that on the 25th day of October appellant did sell eighty-one head of cattle as his own through said commission company for the sum of $2,884.57, which, according to the account of sales, were young heifers and steers, the average weight being about 600 pounds; that it is customary in livestock trade to refer to heifers and steers as mixed calves, depending upon their age and size; (g) that appellant did not have any authority to sell said cattle; (h) that on the following day he paid to the Citizens National Bank of Lubbock, Texas, his personal note in the sum of $1,419.53; (i) that he never did deliver said eighty-one head of cattle to the Western Hereford Exchange, but that soon after the transaction in question he severed his connection with the corporation and went to the State of California (the record being silent as to why he went there), but on the first day of May, 1941, he wrote a letter to Harry F. Stream, Vice-President of the corporation, in which he admitted his shortage to the corporation and suggested certain terms upon which he was willing to settle with it.

We do not deem it necessary to enter upon an extended discussion of the question to demonstrate that the facts proven are sufficient to take the case out of the realm of circumstantial evidence, suffice it to say that appellant came into possession of the cattle in question by reason of his employment but never delivered the cattle to his employer or accounted to it for them. This makes a complete case of embezzlement of the cattle. In support of what we have said here, we refer to the following

cases: Stephenson v. State, 138 Tex. Cr. R. 384; Bell v. State, 132 Tex. Cr. R. 81; Clinton v. State, 132 Tex. Cr. R. 303. His contention is overruled.

Appellant next contends that the trial court erred in declining to submit to the jury his special requested instruction to the effect that if they believed from the evidence or had a reasonable doubt thereof that the defendant first conceived the idea of converting to his own use and benefit the proceeds of the sale of the cattle, then they should find him not guilty or to incorporate one of like import in his main charge. In support of his contention he cites us to the case of Landrum v. State, 166 S. W. 726. An examination of the facts of that case show that Landrum had been specifically authorized by Mrs. Dunn to dispose of her stock in the Amicable Life Insurance Company and to procure for her 250 shares of stock in the Western Casualty & Guaranty Company. It will thus be noted that the accused in that case had authority to dispose of the stock and did so, but failed to obtain for her any stock in the latter company. Consequently, an issue of fact was raised as to whether he conceived the idea of converting the stock or converting the proceeds of the sale of the stock after he had disposed of it. But in the instant case, appellant had no authority to dispose of any cattle except "tail ends or cut backs," but the cattle in question did not come within such class, which distinguishes this case from that of Landrum v. State, supra. The question here raised was before this court in the case of Sherman v. State, 61 S. W. (2d) 488, in which the court, among other things, said:

"Notwithstanding that appellant may have had authority to make the sale of the stock alleged to have been embezzled, yet, if he sold the same with the formed intention to defraud the owner and to convert the proceeds to his own use and benefit, he is as much guilty of embezzlement of the stock as if he had no authority to make such sale. Leonard v. State, 7 Tex. Cr. App. 417; Henderson v. State, 55 Tex. Cr. R. 640, 117 S. W. 825. We quote from 16 Tex. Jur. p. 351, as follows:

" 'Sometimes one who has sold property entrusted to him for sale and absconded with the proceeds, on being accused of embezzlement of the proceeds of the sale, will defend on the theory that what he embezzled was the property itself, and vice versa. It seems that this is largely a question of intent. It has been said that if at the time of the sale the accused had the intent to appropriate the proceeds, he is guilty of the embezzlement of the article, but that if the intent to appropriate them develops after the property has been sold he is guilty of embezzlement of the proceeds of the sale.' "

In the instant case, the facts are sufficient upon which the jury could reasonably base the conclusion that appellant formed the intent to appropriate the cattle to his own use and benefit at the time that he was in lawful possession thereof by virtue of his agency and employment and at the time that he had the cattle taken to the auction ring to be disposed of. We, therefore, overrule his contention.

His next complaint is based on the failure of the court to affirmatively instruct the jury that if the defendant had the implied or express authority to sell the cattle described in the indictment, he would not be guilty unless at the very time of the sale he had formed the intent to convert the funds obtained from the sale of the cattle to his own use and benefit. He contends that he was entitled to such a charge because he introduced in the evidence several letters from the President of the corporation instructing him to sell certain cattle denominated "tail ends." A most careful review of the record has satisfied us that the evidence is not sufficient to raise the issue. Appellant had been especially authorized in certain instances to sell some "tail ends" or "cut backs," but this authority was special and limited to certain class of cattle and was not general. The evidence does not show either express or implied authority to sell the cattle in question; hence no charge on the subject was required. However, the court, at the request of appellant, instructed the jury that if they believed from the evidence or had a reasonable doubt thereof, that the defendant had the consent of an officer or agent of the Western Hereford Exchange to sell the cattle described in the indictment, to find him not guilty. We think this requested instruction was sufficient to meet the objection urged against the court's main charge.

All other matters complained of have been considered and deemed to be without merit.

No reversible error having been presented by the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant's motion is mainly concerned with a failure of the trial court to charge the jury on the law of circumstantial evi-

dence herein, as was timely requested and exception reserved for such failure.

It is incumbent upon the trial court to instruct the jury upon the law of circumstantial evidence only when the fact sought to be proven rests wholly upon circumstances only. We quote from 24 Tex. Jur., p. 587, Sec. 101: "But a charge upon circumstantial evidence is required only where the evidence of the main facts essential to guilt is purely and entirely circumstantial. Such an instruction need not be given when the State's evidence is direct, nor where the facts are in such close juxtaposition to the main fact to be proved as to be equivalent to direct testimony," with many cases cited in the footnotes.

We early said in the case of Beason v. State, 43 Texas Cr. R. 442, 67 S. W. 96:

"The rule is this: That it is only necessary where the main fact, or, as one case puts it, 'where the gravamen of the offense,' or, as another case has it, 'where the act of the crime,' rests solely upon circumstantial evidence, that then it becomes a case known as a case of circumstantial evidence requiring a charge upon that. In the Buntain case, 15 Texas Criminal Appeals 515, Judge White used the following language: 'If a court were required to charge the law of circumstantial evidence in all cases where reliance was had upon circumstances to establish any particular fact, then, indeed, there would be but few, if any, cases in which such a charge would not be required; but such is not the rule. A charge upon circumstantial evidence is only required when the evidence of the main facts essential to guilt is purely and entirely circumstantial.' "

Again, in Hanks v. State, 56 S. W. 922, we have said that:

"We are aware of the rule, and we adhere to the same, that when the main fact constituting the gravamen of the offense is proved by direct testimony, and the intent merely with which the act was done is proven by circumstantial evidence, a charge on circumstantial evidence will not be absolutely necessary."

Again, if the intent alone is determined by circumstances, such would not render the case as one depending upon circumstantial evidence. Jones v. State, 34 Tex. Cr. R. 492, 31 S. W. 664.

Let us see what facts are proven herein by direct testimony: It is shown by direct testimony that on October 24, 1940, appellant purchased for his employers 81 mixed calves from Black-

well & Brantner at Jayton, Texas, and that he drew a draft on his employers, in payment therefor, in the sum of $3,092.84. It also is shown that such draft was paid by such employers. Again it is shown that on October 25, 1940, the Lubbock Auction and Commission Co. purchased from appellant 40 head of mixed cattle for $1,465.07, and paid by check payable to appellant with his endorsement on the back of such check, which check seems to have been cashed by a friend of appellant's at appellant's request. Again, on the same day, we find that appellant sold 41 head of mixed cattle for the net sum of $1,419.53, for which a check was mailed to Citizens National Bank at Lubbock, Texas. Mr. Arnet, president of that bank, testified that on the 25th or 26th of October, 1940, appellant made a payment on a note owed by him to that bank, such payment being in the sum of $1,419.53, such being paid with a check of the Lubbock Auction and Commission Company.

Mr. Kelly, sheriff of Kent County, testified that about October 25, 1940, he moved from Jayton, Texas, some cattle for appellant, and he thought he was directed by appellant to deliver such cattle to the Lubbock Auction and Commission Company.

By direct testimony we have appellant in possession of 81 head of cattle belonging to his employers; we have him selling 81 head of cattle the next day, and we find that his employers never received such cattle nor the money therefor. The only fact that remains unproven by direct testimony is the identification of the cattle moved by Mr. Kelly as those purchased by appellant from Blackwell & Brantner. That matter alone remains as shown by the circumstances, such being the direct proof of a purchase that day of cattle at Jayton, Texas, the removal of some cattle that day, their being placed in the custody of the Auction Company, and the sale by such company of 81 head of cattle, and the receipt of the funds paid therefor by appellant, and his disposal thereof.

We think the main fact to be proven herein has been shown by direct testimony, the identity alone of the cattle moved by Kelly being dependent upon circumstances.

The motion will therefore be overruled.

BEAUCHAMP, Judge (Concurring).

I am concurring in the opinion overruling appellant's motion for rehearing and feel constrained to give expression to

my reasons for so doing. According to my view, the gravemen or burden of the proof lies not in the facts surrounding the final disposition of the eighty-one head of cattle as detailed in the record, but rather in the embezzlement which is completed by the fraudulent misapplication or conversion of the cattle—not of the money received for the sale of the cattle.

Mr. Stream, Vice President of the Western Hereford Exchange, testified that his company was engaged in the business of buying cattle and shipping them to Iowa. Appellant was employed as a buyer for that company. His duties were to buy cattle and sheep and ship the same to Iowa to the company. He had no authority to sell in Texas or to keep them for any purpose. Stream identified a draft signed by appellant for $3,091.21, with bill of sale attached, showing the transfer of eighty-one head of cattle on October 24, 1940, to Western Hereford Exchange. This draft was paid, but the company never received the cattle.

The indictment alleged the embezzlement of eighty-one head of cattle and made no charge of the embezzlement of money. By direct testimony, it is shown that appellant came into possession of the cattle and that the company never received them, thus making out a prima facie case of embezzlement. True it is that it was further shown that appellant sold the same number of cattle the next day, and used at least a portion of the proceeds in the payment of his private debt. This might be taken as additional proof that he embezzled the cattle, but such additional proof was not necessary to show an embezzlement as charged. Appellant might have the cattle now and still be guilty of embezzlement. He might have elected to keep them and merge them with his own herd, yet the offense would be complete. He was not charged with the unlawful *sale* of the cattle, or the misapplication of the funds received therefor. The receipt of the funds was but an ancillary matter, the offense being complete when he failed to deliver the cattle to their owner. What was done with the cattle was, I think, permissible to be shown. See Hendricks v. State, 55 S. W. (2d) 839.

I am of the opinion the following holding in Steadham v. State, 40 Texas Crim. Rep. 43, correctly states the rule:

"It is also insisted that the court should have charged the law applicable to a case of circumstantial evidence. As before stated, the fraudulent conversion is not a disputed fact, under the evidence, and therefore it was not necessary to charge the law on circumstantial evidence."

HAWKINS, Presiding Judge (dissenting on Motion for Rehearing.)

In his motion for rehearing appellant urged that we were in error in our original opinion in reaching the conclusion that the trial court was not required to charge on circumstantial evidence, criticism of its omission being pertinently called to the court's attention by objections to the charge given.

After a careful re-examination of the record I have concluded that upon the point mentioned we were in error.

The indictment charged that appellant, in Lubbock County, fraudulently embezzled, misapplied and converted to his own use, without his principal's consent, eighty-one head of cattle which had come into appellant's possession by virtue of his agency. This eighty-one head of cattle had been purchased by appellant in Kent County for his principal and paid for by a draft drawn on his principal by appellant. The State prosecuted in Lubbock County, under Article 203, C. C. P., which reads as follows:

"Embezzlement may be prosecuted in any county in which the offender may have taken or received the property, or through or into which he may have undertaken to transport it."

There was nothing wrong with the purchase of the cattle in Kent County. Appellant was authorized to so purchase. The factum probandum, that is, the necessary main criminal fact to be established, under the State's charge, was the conversion of the identical property in Lubbock. It is appellant's contention that the State relied on circumstantial evidence to prove this vital fact. Under the circumstances here present and the character of the property involved, we believe the same rule applies as in cases of theft where the identity of the alleged stolen property is proven by circumstantial evidence. The principle has been frequently announced and consistently followed that the identity of stolen property is a material fact, and that where it may be shown by circumstantial evidence the jury must be instructed regarding such evidence whenever the facts call for it. Rampley v. State, 127 Tex. Cr. R. 319, 76 S. W. (2d) 515; Childers v. State, 37 Tex. Cr. R. 392, 35 S. W. 654; Felts v. State, 53 Tex. Cr. R. 48, 108 S. W. 654; Pierson v. State, 78 Tex. Cr. R. 275, 180 S. W. 1080, and Moore v. State, 85 Tex. Cr. R. 573, 214 S. W. 347.

The evidence here shows that on October 24, 1940, appellant purchased for his principal, from Blackwell and Brantner at Jayton, in Kent County, eighty-one head of "mixed calves." They were delivered to appellant in "the pens" at Jayton. Under his contract appellant was supposed to ship the calves to his principal in Iowa. Mr. Kelly testified, "I moved some cattle for Mr. Stocks (appellant) back about October 25, 1940 * * * I made a trade with him to move them to Lubbock from Jayton * * * I think he said to deliver them to the Lubbock Auction and Commission Company."

Kelly does not state the number or kind of cattle taken to Lubbock by him, nor where in Jayton the cattle were delivered to him, nor by whom. He does not even say he delivered them to the Lubbock Auction and Commission Company. The facts further show that on October 25, 1940, the latter company made two sales of cattle for appellant, one sale being for forty head described in the account sales as steers and heifers, and another sale of forty-one head of steers and heifers. A witness who was connected with said auction and commission company testified that it was "customary in the live-stock trade to refer to heifers and steers as mixed calves, depending on their size and age." The account sales further shows the weights of the cattle to be such as would support the conclusion that they were light weight, young cattle. The State also introduced in evidence a letter from appellant to his principal written from California on May 1, 1941, in which appellant admits that he owed his principal four thousand dollars, but the letter makes no mention of the particular transaction here involved. There is no direct admission of the conversion of the eighty-one head of cattle which would take the case out of the rule of circumstantial evidence. See Meyers v. State, 22 S. W. (2d) 922. The only evidence upon which the State relied to show the conversion in Lubbock County of the cattle which came into appellant's possession in Kent County was the sale in Lubbock County of eighty-one head of cattle at the instance of appellant, and for which he received payment.

If there had been direct evidence from Blackwell and Brantner, or any other witness that the eighty-one head of "mixed calves" delivered to appellant in Kent County were the same cattle Mr. Kelly hauled for appellant to Lubbock, and direct evidence from some witness that the cattle sold by the commission company for appellant in Lubbock were the same cattle delivered to the company by Kelly, it would of course have taken the case out of the realm of circumstantial evidence;

but no such evidence is in the record, and the identity of the cattle sold with those purchased is an inference from the facts heretofore related. "If the main fact (here being the conversion of the particular property purchased by appellant in Kent County) is proved as a matter of inference from other facts in evidence the case rests wholly, in a legal sense, upon circumstantial evidence." Branch's Ann. Tex. Penal Code, Sec. 2478, p. 1341, and cases cited thereunder.

It is not to be understood as intimated that the evidence in the record did not warrant the jury in drawing the inference from the circumstances proven that the cattle sold were the same as those purchased. Consideration has been of the legal proposition that appellant was entitled to a charge on circumstantial evidence, which desire on his part was directed to the trial court's attention by a pertinent objection because of its omission from the charge given.

The motion for rehearing should be granted; the judgment of affirmance set aside, and the judgment of the trial court reversed and the cause remanded. My brethren have reached a different conclusion to which, for the reasons herein stated, I respectfully dissent.