Reed *v.* State

No. 40274        December 10, 1956        91 So. 2d 269

*A. S. Scott, Jr.,* Laurel, for appellant.

*John H. Price, Jr., Asst. Atty. Gen.,* Jackson, for appellee.

GILLESPIE, J.

Indicted for the murder of Louvenia Knight, appellant was convicted of manslaughter and sentenced to

serve a term of twelve years in the State penitentiary. There is very little dispute in the testimony.

The deceased, Louvenia Knight, lived in a threeroom house in Laurel, and rented the middle room to Frank Jones. Her sister, Juanita Knight, occupied the front room. Appellant was not married to Juanita, but he stayed with her two or three nights a week and had been doing so for some months prior to the events about to be related. Appellant paid no rent to Louvenia for the partial use of the front room, nor did he bear any of the expenses of the establishment.

On November 3, 1955, appellant took Juanita in his car to her parents' home in the country, and he went hunting with Juanita's brothers later in the afternoon. Late that afternoon, appellant took Juanita back to Laurel and they went to a picture show where they met Louvenia. They left the show about 8:30 P. M. and went to an establishment known as the Honey House, where they all got "high" drinking whiskey and beer. Juanita, Louvenia and appellant left the Honey House in appellant's automobile, but it is not clear whether they were going directly to Louvenia's house or to He-Haw's Place, where appellant wanted to go. Appellant was driving too fast to suit Louvenia and she said she wanted to get out of the car. Juanita also told appellant to stop and he did so, at which time Louvenia and Juanita got out of the appellant's car and took a taxi to Louvenia's home. Frank Jones, occupant of the middle room of Louvenia's house, opened the back door and let them in and the door was again latched. Shortly thereafter, appellant drove up, parked his car in front, and came to the back door. Louvenia told appellant that she was not going to let him in because he was drunk. Appellant then opened his Arkansas switch-blade knife and opened the screen door, then proceeded to kick the two latches off of the wooden door, and when the door came partly open, Louvenia was standing in the back room with a hammer

and Juanita was holding a razor. Appellant jumped back out of the door and returned to his car where he got the shotgun he had used in hunting earlier in the day. In the meantime, Louvenia told appellant if he tried to come in again she would have him arrested, and as appellant walked from his car back to the rear door, Louvenia saw him with the gun and told Juanita that appellant was coming with a gun and for Juanita to run. Juanita did run to the middle room and jumped in bed with and behind Frank Jones. Frank got out of bed and put on his pants. While appellant was going to his car, Louvenia renailed the wooden latch to the back door, but when appellant again came to the back door he kicked it open and entered the house with the shotgun in his hand. When he reached the middle room, Louvenia grabbed the gun and she and appellant went into the back room wrestling over the gun. A few seconds later, the gun went off and Louvenia came into the middle room where Frank and Juanita were and said, "Juanita, W. C. done shot my arm off." Louvenia's arm was hanging by small bits of tissue.

Appellant then came into the middle room with the gun and said there was nothing in it, but when he manipulated the gun, another shell fell out. Appellant then offered to take Louvenia to the hospital, and he, Juanita and Louvenia got into appellant's car and started to the hospital. When they were going through the business district of Laurel, appellant was driving at a high rate of speed and the car started zigzagging, and Juanita looked over and appellant was not in the car, and she did not know how he got out. The car went a short distance and wrecked. Louvenia and Juanita were thrown out of the car. After an interval, they were all taken to the hospital, where a policeman asked appellant why he shot Louvenia, known as "Big Mama", and appellant's reply was that Juanita was his girl friend and he wasn't trying to shoot "Big Mama," that he was going to shoot Juanita.

A physician amputated Louvenia's injured arm and the next morning she went into shock and died. The uncontradicted medical proof, after a partial autopsy had been made, was that Louvenia died of pulmonary embolism; that the embolism was brought on either by the gunshot wound or the surgery; that surgery was essential; that Louvenia showed no injuries from the wreck and that the wreck did not cause the embolism.

■■ ■ Appellant assigns as error the refusal of the lower court to grant a peremptory instruction and relies on the case of Weathersby v. State, 165 Miss. 207, 147 So. 481. It was held in the Weathersby case that where the defendant is the only eye witness to a homicide, his version, if reasonable, must be accepted as true unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge. The present case is not one for the application of the rule just stated. ■■■ ■ It is true that neither Frank Jones nor Juanita could see appellant and Louvenia wrestling over the gun when it went off, and appellant testified that he did not intend to shoot Louvenia and that the shooting was an accident. But the jury had before it all of the testimony of the events leading up to the shooting and the fact that appellant made the unlawful entry into Louvenia's house armed with a deadly weapon with the intention to shoot Juanita.

Appellant also assigns as error the admission of the testimony of Juanita Knight that Officer Drennan asked appellant at the hospital, ''Why did you shoot 'Big Mama'?'' and that appellant said, ''White folks, I don't know whether she is a woman or a man or what. Juanita is my girl friend. I wasn't trying to shoot Big Mama, I was going to shoot Juanita.'' This testimony was admitted before the physician testified that the cause of death was the embolism that resulted from the gunshot wound or the surgery.

We concede, without deciding, that at the time the so-called confession was admitted in evidence that the State had not then proven that the crime with which accused was charged had probably been committed, that is to say, the corpus delicti had not been established. But the statement attributed to appellant was not a confession. ██ ██ A confession is an acknowledgement in express terms of the confessor's guilt of the crime charged. ██ ██ An admission is a statement by the accused, direct or implied, of facts pertinent to the issue, and tending, in connection with other facts, to prove his guilt. Pringle v. State, 108 Miss. 802, 67 So. 455; Wharton's Criminal Evidence, 12th Ed., Sec. 337; 20 Am. Jur., Evidence, par. 478. ██ ██ The statement of accused was not a confession, but an admission.

██ ██ Appellant requested and was refused two instructions, both of which told the jury that the State's proof must "exclude every other reasonable hypothesis consistent with innocence." One of these instructions assumed that appellant was confronted with circumstantial evidence only. Neither of these instructions was proper unless the evidence against the accused was circumstantial only. This was not the case. Practically all of the testimony, as shown by the statement of facts, was direct testimony. It was not error to refuse these instructions.

A careful review of the entire record reveals no reversible error and the case is affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Kyle* and *Arrington,* JJ., concur.