ANDERSON *v.* STATE

No. 42596        May 6, 1963        152 So. 2d 702

*Norman B. Gillis, Jr., J. Gordon Roach,* McComb, for appellant.

*G. Garland Lyell, Jr.*, Asst. Atty. Gen., Jackson, for appellee.

ARRINGTON, J.

Appellant was indicted in the Circuit Court of Pike County for the murder of Harry Billings, and was tried, convicted, and sentenced to death. From this judgment he prosecutes this appeal.

The record discloses that Mr. and Mrs. Billings lived in the Oakdale Community a short distance east of

McComb, Mississippi. Mr. Billings worked for the Illinois Central Railroad Company in McComb and got off from his work at four o'clock in the afternoon. On January 4, 1962, after picking up her granddaughter, Mrs. Billings arrived home at approximately 4:45 P.M. As was her custom, she blew the horn of her automobile on arrival for Mr. Billings to come get their granddaughter out of the car. There was no response, so she went into the house calling her husband. She found blood on the floor and other evidence of violence, and later found her husband near the back steps of their home. He had been brutally beaten. She called for a doctor and an ambulance to take him to the hospital, but when the ambulance arrived Mr. Billings was dead.

Dr. Thomas P. Wood arrived at the home shortly after the ambulance. He testified that Mr. Billings was dead and had been "beaten to death." Mr. Anders from the funeral home was the first to arrive on the scene and he testified that he found Billings dead and called the city police in McComb and asked them to notify the sheriff. His testimony was that there was blood all over the floor, the bathroom door was torn off the hinges and was lying in the tub; the screen window was torn out of the bathroom, and the house "was a terrible mess." He further testified that there was a claw hammer on the bottom step just a foot or two from the head of the deceased; that the deceased had five skull fractures, three across the front and two across the back of his head; that he had a stab wound in the right side of his chest under the breast bone into the cavity; and he had a stab wound in the back about four inches long just above the belt level; that he had two lacerations in the cheek which could have been made by a knife or some blount instrument.

Appellant was arrested a short time thereafter and confessed to the murder. In his confession, he stated that about 4:30 P.M. on January 4, 1962, he went through

a back bedroom window into the Billings house, and on into the kitchen. No one was at home at that time. He picked up a claw hammer from a kitchen cabinet. About that time Mr. Billings drove up in a pickup truck, came in the house, walked through the living room and dining room and into the kitchen. He took off his coat and then put on some coffee. He, appellant, was standing in the hall near the floor furnace, and when Mr. Billings walked out of the kitchen into the hall he hit him with the hammer. Billings then ran through the living room and dining room into the kitchen where appellant caught him at the back door. The wooden door was open, but the screen door was latched. Appellant again struck Billings with the hammer; Billings got up and ran into the bathroom. He chased him but Billings had locked the bathroom door. Appellant beat the door down with the hammer and saw Billings diving out the bathroom window. Appellant then turned and ran out the back door and caught Billings at the north back corner of the house. Billings had a pocket knife which appellant took away from him, and in so doing cut his left hand. Billings ran to the north front corner of the house, but appellant overtook him from behind and stabbed him one time. Billings fell and while he was down, appellant stabbed him two more times. He dragged Billings back around the house to the north side of the back steps, feet first, then he stood him up and hit him twice with a Coca-Cola bottle. He went back to the north front corner of the house where he had left the hammer, picked it up, and came back to the back steps and hit Billings once more in the head with the hammer. He threw the hammer down on the ground and dragged the body of Billings back to the bottom of the back steps, then left and went to his mother's home.

Appellant signed a confession and it was witnessed by five persons. After prolonged qualifying testimony was introduced, the confession was admitted in evidence

as being freely and voluntarily made. The confession is not challenged on this appeal. It is corroborated by the State's witnesses, by the photographs introduced in evidence, and by the fact that Billings' knife was found the next day by an officer under the northeast part of the house where appellant said he had thrown it, and by the testimony of appellant's mother, who testified in his behalf, and said that when he arrived at her home he had his hand cut and it was bleeding; that he changed clothes, and she later identified the clothes appellant had on at the time of the murder.

A suggestion of insanity and motion for transfer of appellant to the Mississippi State Hospital for examination to determine his sanity was filed at the March 1962 term of court, which motion was sustained by the court.

The first assignment of error argued is that the court erred in not sustaining the application for a change of venue, setting out that he could not obtain a fair and impartial trial in Pike County because of the prejudgment of the case and the ill will existing toward appellant, and further because of newspapers publishing statements and editorials with reference to the crime and the forth-coming trial. Twelve witnesses testified on the application for change of venue, eleven for the state, including citizens from various parts of the county, who testified that appellant could obtain a fair trial and there was no prejudgment of the case. One witness testified for defendant that there was prejudgment at the time of the crime but there was no feeling against the appellant at the time of trial. He was of the opinion that appellant could get a fair trial.

(Hn 1) We have held in numerous cases that the granting of change of venue is largely within the discretion of the trial court, and a judgment of conviction will not be reversed on the ground that a change in venue was refused unless it clearly appears there was an

abuse of this discretion. **(Hn 2)** We do not think there was such abuse in this case. Slyter v. State, 149 So. 2d 489, and authorities there cited. Cf. Wheeler v. State, 219 Miss. 129, 63 So. 2d 517, as to newspapers and radio publicity.

**(Hn 3)** It is next argued that the court erred in admitting photographs in evidence. There were a number of photographs introduced which included the home, the living room, hall, bathroom, and the bathroom door. No photographs were introduced showing the body of deceased. We are of the opinion that these photographs were admissible in evidence as they were competent, material and relevant to show the scene of the crime. Slyter v. State, supra.

**(Hn 4)** Appellant next argues that the court erred in permitting the jury to take the photographs in the jury room to view while deliberating on the verdict. The appellant cites no authority to support his position. The record does not show that the jury had the exhibits before them when they retired to consider their verdict, however, we are of the opinion that they had the right to inspect and view all exhibits which were admitted in evidence.

**(Hn 5)** It is next argued that the State's evidence does not support appellant's sanity. Dr. Head was introduced by the State and testified that a complete psychiatric examination was made by the staff at Mississippi State Hospital and appellant was found to be sane and without psychosis, and knew right from wrong at the time he killed Billings. Although he was twenty years of age, his mental age was classed as ten and one-half years. Several witnesses testified for defendant that he was not a normal child; that he only finished the third grade in school; that he would often go to sleep and he had spells. His mother testified that he didn't act like other children. It was brought out that he worked on a farm driving a tractor and operating

a hay-baler. See Wilson v. State, 243 Miss. 859, 140 So. 2d 275, and authorities there cited. We find no merit in the contention that the State failed to meet the burden of proving appellant's sanity.

(Hn 6) It is lastly argued that the court erred in granting the State's instruction, contending that it was error because the instruction on the burden of proof did not contain the words "and to the exclusion of every other reasonable hypothesis." We have held in many cases that this language is necessary and to be included only when the case is based entirely upon circumstantial evidence. In Underhill on Criminal Evidence, Vol. 1, 5th ed., Sec. 4, p. 5, it is stated: ". . . . Direct evidence of the crime is the evidence of an eye witness that it was committed. This includes in criminal law the confessions and admissions of the accused and dying declarations. . . . ."

In 20 Am. Jur., Sec. 485, p. 423, it is stated: "The question of the character of confession as circumstantial or direct evidence has arisen generally in cases dealing with the necessity of instructing the jury as to circumstantial evidence. It is generally held that for such purposes testimony of a confession is direct and not circumstantial evidence and that the courts may properly refuse to charge on circumstantial evidence in such case." 40 A.L.R., Anno. 571-573; 23 C.J.S., Sec. 816, p. 155; Burgess v. State, 145 So. 2d 160; Kirk v. State, 222 Miss. 187, 75 So. 2d 641.

This Court has held in innumerable cases that the establishment of the corpus delicti and the confession of the accused is ample to sustain a verdict of guilty beyond all reasonable doubt. In the instant case neither the corpus delicti nor the confession is questioned.

After a careful examination of the record we hold that it is free from reversible error, if error at all, and that appellant's guilt is manifest from the evidence

beyond all reasonable doubt. The judgment should be and it is affirmed.

Affirmed and Friday, June 14, 1963, is hereby fixed as the date for the execution of the death sentence in the manner provided by law.

All Justices concur.