749 So.2d 1188 (1999)
Terry Lynn PRICE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-01037-COA.
Court of Appeals of Mississippi.
September 7, 1999.
*1190 Michael T. Rushing, and Dan W. Duggan Jr., Brandon, Attorneys for Appellant.
Office of the Attorney General by W. Glenn Watts, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, AND IRVING, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Terry Lynn Price was convicted by a Yazoo County Circuit Court jury on two counts of sexual battery and one count of kidnaping. On appeal Price presents five grounds for reversal: ineffective assistance of counsel, fingerprint evidence alone insufficient, general evidence insufficiency, failure to grant a circumstantial evidence instruction, and the prosecutor's referring to Price in closing argument as a "monster." We find no reversible error in any of the claims and affirm.

FACTS
¶ 2. On the night of August 20, 1995, the victim in this case was lying on her couch watching television in her apartment in Durant, Mississippi. Her windows were open when she noticed her purse moving across the floor. She looked up and discovered that there was a man in her house. This man, armed with a sharp object, forced the woman into her bedroom and raped her. He then kidnaped her, taking her to a church driveway where he sexually battered her multiple times. The perpetrator then had the victim drive to another location where he choked her. He put the victim in the trunk of her car and drove to a bridge. The assailant then twice threw his victim off of the bridge. The second fall rendered her unconscious. She was discovered by the side of the road the next morning by a friend and taken to the hospital. The investigation resulted in the arrest of Price.

DISCUSSION

Issue 1: Sufficiency of fingerprint evidence to sustain a conviction.
¶ 3. The victim never could identify Price as the culprit, being traumatized by the event and not having gotten a good view of her assailant in the darkness that surrounded his acts. The principal evidence incriminating Price were his palm *1191 prints and fingerprints found in the victim's home and car. The locations were on the window sill over which entry was likely made, on the dining room table near the same window, on a door frame inside the house through which the assailant passed from the dining room, and in the back seat area of the vehicle, the place in which the victim said that her assailant sat as he ordered her to drive.
¶ 4. Both Price and the victim stated they did not know each other and there was no prior reason for the fingerprints to be in these locations. Price's explanation for the fingerprints being in the victim's house and car was that at about 4:00 A.M. the same night but six hours after the attack on the victim, a recent acquaintance of his picked him up. The friend had a prostitute in the car. The three of them went to a house in order that the friend could show Price furniture inside that he wanted to sell. Price identified the car and the home as being those belonging to the victim. He then explained why he was in each location within the home at which his fingerprints were discovered. By asserting that his acquaintance had the victim's car and access to the home after the crime, Price may have been implying that the acquaintance had a connection to the crime. In any event, he argues that his allegedly reasonable explanation for being in the home and car made the fingerprint evidence inconsequential.
¶ 5. Price relies on two supreme court cases for the proposition that fingerprint evidence, unaided by other corroborative evidence, cannot support a conviction. In one, a single print of the defendant was found on the rear view mirror of a stolen automobile. McLain v. State, 198 Miss. 831, 835, 24 So.2d 15 (1945). The car was found abandoned a few days after the theft. "No witness testified to having seen appellant in Clarksdale on the night the car was stolen, or on the day it was recovered; and, as stated, there is no evidence in the record of any kind as to when, or under what circumstances, this print was made on the rear-view mirror." McLain, 24 So.2d at 16. Without more, the defendant's conviction for grand larceny was reversed. Id.
¶ 6. The other precedent urged upon us involved the fingerprints of an accused found on several cigarette cartons. The cartons were being carried by an unidentified man two blocks away from a grocery store that had been burglarized, but upon seeing police the man dropped the cigarettes, ran, and was not apprehended. Corbin v. State, 585 So.2d 713, 714 (Miss. 1991). These items were definitely connected to the burglary, but prints on those packages did not put the accused at the store during the burglary. Id. There were reasonable opportunities for a person other than the burglar to have touched the cartons. "Fingerprint evidence must be coupled with some other evidence, especially so when the fingerprint was not found at the crime scene but on some object away from the scene." Id. at 716.
¶ 7. McLain involved a single print showing McLain's presence in a stolen vehicle at some time. Price is confronted with several prints that not only show his presence several places in the victim's home but also in her car. All the prints in Corbin were on the cigarette cartons, but the prints could not place Corbin at the scene of the crime. Price's prints put him at each of the varied crime scenes.
¶ 8. We find more relevant guidance from the holding that "fingerprint evidence, coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime, will be sufficient to support a conviction." Wooten v. State, 513 So.2d 1251, 1252 (Miss.1987). Here, the State produced a window screen from the victim's house that had been cut. Price's prints were found on the window sill from which the screen had been taken and were also found on a table inside of the house very near the window. His prints were found on a door frame inside the house. The *1192 victim said that she had been forced to drive her car as the assailant threatened her from the back seat. Price's print was found on the inside of the glass on the rear seat passenger's window, on the driver's side. Those are not just a random and isolated print in a car or on cartons, but were prints left in locations that placed Price along the precise and narrow path taken by the perpetrator. They were not found on one object, but appeared in meaningful combination.
¶ 9. McLain and Corbin are important statements that fingerprint evidence without more may be insufficient. However, in this case multiple fingerprints were found in multiple specific locations directly connected with the crime, and the accused admitted to being in the victim's house and car on the night of the crime. The State is not relying on fingerprints unanchored in time and reasonably explainable in ways innocent of the crime charged. Once Price presented his explanation, the inferences that could be drawn by the jury from this evidence were quite limited. Either the jury found Price's story to create reasonable doubt or else Price was the perpetrator. Either way, this case does not suffer the McLain-Corbin defect.

Issue 2: Sufficiency of the evidence
¶ 10. Price gives several reasons why the evidence was not sufficient. First, he argues that there was no eyewitness identification of him. Such evidence is not required where there is sufficient other direct and circumstantial evidence. Mack v. State, 481 So.2d 793, 795 (Miss. 1985).
¶ 11. The description that the victim gave of her assailant is said to vary too much from Price's appearance. The record reveals that the victim actually was never able to give much of an identification. At the time of trial, Price was 5' 11" tall and weighed 149 lbs. The victim referred in her testimony to a black male with strong arms who was a little taller than she. No evidence exists as to the victim's height. She also stated that her attacker's build was similar to that of a photograph of Price, though she was clear that she could not identify Price as her assailant. An investigator testified that his notes indicated a height of 6' 2" for Price, but there was no indication of the source of that information. Regardless, the discrepancy between what Price claims was the victim's description and the actual physical appearance of Price is insubstantial.
¶ 12. Next, Price admitted that his prints were in the victim's house but claims that he gave a plausible explanation that had to be accepted. Price is approaching the argument that applies in homicide prosecutions and often when self-defense is alleged, that if "the defendant's witnesses are the only eyewitnesses to a homicide, their version of what happened, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by credible evidence, physical facts or facts of common knowledge." Harveston v. State, 493 So.2d 365, 370-71 (Miss.1986). This is generally known as the Weathersby rule. Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933). The supreme court suggested it has broader application:
[W]e sometimes overlook the fact that it is nothing more than a restatement of the general rule recited above; that is, if the defendant and his witnesses are the only eyewitnesses to the homicide and if their version of what happened is both reasonable and consistent with innocence and if, further, there is no contradiction of that version in the physical facts, facts of common knowledge or other credible evidence, then surely it follows that no reasonable juror could find the defendant guilty beyond a reasonable doubt.
Harveston, 493 So.2d at 371. It may be recalled that Price's explanation was that someone else, perhaps the actual assailant or at least someone who knew that the victim was not coming back soon, took *1193 Price in the victim's own car to her own house in order that Price could inspect her furniture. That may seem more farfetched to some than it does to others. Regardless, a jury has always been entitled to reject any witness's story that is unreasonable or incredible. We find that to apply to this explanation of the physical evidence.
¶ 13. Finally, Price argues that his three alibi witnesses placed him elsewhere at the time of the crime. Each witness, one of whom was his mother, was shown to have a personal connection with Price. The stories of the witnesses were not consistent. One of the witnesses appeared actually to be giving an alibi for a different night than that of the crime. Simply put, the credibility of witnesses is a matter for the trier of fact. Winston v. State, 726 So.2d 197, 201 (Miss.App.1998). They chose not to believe Price's witnesses, which they had a right to do.

Issue 3: Circumstantial evidence instruction
¶ 14. Price offered a "two-theory" instruction, identical in purpose to a circumstantial evidence instruction. When that instruction (D-6) was reached in conference with the judge, the prosecutor stated that this "is not a circumstantial evidence case." The trial judge merely said "D-6 is denied." In relevant part, the instruction provided that if there are facts or circumstances "susceptible of two interpretations, one favorable and the other unfavorable to the Defendant," and if there is reasonable doubt in light of all the other evidence as to which interpretation is correct, that doubt must be resolved in favor of Price. There is no difference in effect in this sort of instruction and the more normal circumstantial evidence instruction. The precedents analyzing either are applicable to both. Parker v. State, 606 So.2d 1132, 1140-41 (Miss.1992).
¶ 15. The supreme court has made clear that when "the evidence for the prosecution is wholly circumstantial in nature, the accused is entitled" to have a circumstantial evidence instruction given. Keys v. State, 478 So.2d 266, 267 (Miss.1985). However, the "instruction must be given only where the prosecution is without a confession and wholly without eye witnesses to the gravamen of the offense charged." It appears that no Mississippi case before Keys had ever used that last description of the rule, and therefore the case law that fleshes out the meaning dates only from Keys. That version of the rule has some support in traditional evidence law, which one compilation summarized as requiring the instruction "only where the case rests solely and alone upon circumstantial evidence; that is to say, where the main fact, or gravamen, of the offense or act of the crime rests upon circumstantial evidence alone." A.P. Will, "Circumstantial Evidence," in III EDGAR W. CAMP & JOHN F. CROWE, ENCYCLOPEDIA OF EVIDENCE 64 (1904). A common statement is that the instruction is not necessary unless conviction is sought on circumstantial evidence alone. See Annotation, Duty of Court in Criminal Case, in Absence of Request, to Charge with Respect to Circumstantial Evidence, 15 A.L.R. 1049-1061 (1921). That has also been Mississippi's rule. 1 JULIAN P. ALEXANDER, MISSISSIPPI JURY INSTRUCTIONS § 1501 (1953) at 358.
¶ 16. Once the meaning of "wholly" circumstantial is understood, the differences in the standards appear minor. If the only direct evidence in a homicide case is testimony that a witness heard a gunshot and then saw the victim fall dead, the case that proves the guilt of a specific defendant is still wholly circumstantial. Hooker v. State, 716 So.2d 1104, 1107 (Miss.1998); Permenter v. State, 99 Miss. 453, 54 So. 949, 949-50 (1911). On the other hand, if the only evidence in a drug possession case is testimony that drugs were found in a place under the dominion and control of the defendant, that is direct evidence. That is because having constructive possession is as prohibited as is *1194 actual physical possession. Keys, 478 So.2d at 268. In other words, the direct evidence that avoids the instruction must directly and not by inference implicate the accused and not just show that there has been a crime. Direct evidence is eyewitness accounts. That includes a confession since it is a statement by an eyewitness that admits that person's own guilt.
¶ 17. Finally, there is logic behind requiring the instruction only if the evidence is entirely circumstantial. "[W]here the evidence is partly direct and partly circumstantial, an accused is not entitled to an instruction that the evidence must exclude from their minds every other reasonable theory than that of guilt" because that standard is "not applicable to the testimony of eye-witnesses." 1 ALEXANDER, JURY INSTRUCTIONS, § 1501 at 358; see also § 138 at 64-65. This has long been the law. Keys added the word "gravamen," which requires some definition.
¶ 18. "Gravamen" is defined as the "material part of a grievance, complaint, indictment, charge, cause of action, etc." BLACK'S LAW DICTIONARY 701 (6TH ED.1990). To see an example of this we review the background of one of the cases relied upon in Mack v. State, 481 So.2d 793, 795 (Miss. 1985), Mack being a case upon which we will shortly be focusing. Cited several times in Mack was Anderson v. State, 246 Miss. 821, 152 So.2d 702 (1963). That case held that a confession was direct evidence and not circumstantial. Anderson, 152 So.2d at 704. One of the two cases Anderson relied upon involved a prosecution for the theft of a calf. Id., citing Burgess v. State, 245 Miss. 1, 145 So.2d 160 (1962). The defense was that the accused had accidentally struck the calf on the highway and broken its leg, that the defendant then shot the calf to put it out of its misery and that he planned all along to find the owner and compensate him. Burgess, 145 So.2d at 161. No circumstantial evidence instruction was needed. "There was direct proof by the admission of appellant that he had shot the calf and that he and his companion had butchered it and transported it to Louisiana." Burgess, 245 Miss. at 3, 145 So.2d at 161. Though not put in these terms, the fact that Burgess's admission also included a denial of having the necessary intent of permanently depriving the owner of the property was irrelevant since that is not part of the gravamen of the crime of theft. Instead, the gravamen is the taking of the property. Intent is almost always, absent a confession, proved by inferences from conduct and not by direct evidence.
¶ 19. There has been little discussion in Mississippi law of the core elements less than the total that constitute the "gravamen" of different offenses. We find helpful analysis from a sister state
We early said in the case of Beason v. State, 43 Tex.Cr.R. 442, 67 S.W. 96, 98, 69 L.R.A. 193: "The rule is this: That it is only necessary where the main fact, or, as one case puts it, `where the gravamen of the offense,' or, as another case has it, `where the act of the crime,' rests solely upon circumstantial evidence, that then it becomes a case known as a case of circumstantial evidence requiring a charge upon that. In the Buntain case, [Buntain v. State], 15 Tex.Crim. App.[Tex.App.] 515, Judge White used the following language: `If a court were required to charge the law of circumstantial evidence in all cases where reliance was had upon circumstances to establish any particular fact, then, indeed, there would be but few, if any, cases in which such a charge would not be required; but such is not the rule. A charge upon circumstantial evidence is only required when the evidence of the main facts essential to guilt is purely and entirely circumstantial.'"
Again, in Hanks v. State, Tex.Crim. App., 56 S.W. 922, we have said that: "We are aware of the rule, and we adhere to the same, that when the main fact constituting the gravamen of the offense is proved by direct testimony, and the intent merely with which the act *1195 was done is proven by circumstantial evidence, a charge on circumstantial evidence will not be absolutely necessary."
Stocks v. State, 147 Tex.Crim. 164, 179 S.W.2d 305, 308 (1943)(on motion for rehearing). The court summarized its analysis by holding that "if the intent alone is determined by circumstances, such would not render the case as one depending upon circumstantial evidence." Id. Of some significance, perhaps, Texas has now abolished the requirement of giving a separate circumstantial evidence instruction. Hankins v. State, 646 S.W.2d 191, 197 (Tex.Cr. App.1981)(on motion for rehearing).
¶ 20. We now turn to applying this law to the relevant offenses of kidnaping and sexual battery. A circumstantial evidence instruction should have been given if the "gravamen" of the offense was proven solely by circumstantial evidence. Each main as well as subordinate element of the crimes was proven by direct evidence in the form of the testimony of the victim, but none of her testimony identified the guilty party. Her testimony is direct evidence that a crime occurred but is not direct evidence of the "main facts essential to guilt" of Price.
¶ 21. We look to the other evidence. Identity of the accused was supported by the fingerprint evidence and the inferences that the jury could draw from Price's attempt to explain that evidence. Fingerprints are circumstantial evidence of Price's identity as the perpetrator of the crime. They prove that he was in the house and car and touched the items on which the prints were found. Anything else that might be proved by the fingerprints arises from inferences.
¶ 22. We finally look at Price's statement, which certainly was not a "confession." The proviso that no instruction is needed if there has been a confession must be read in light of the first significant case after the new statement of the rule was made in Keys. The defendant had been charged with burglarizing his own mother's house and taking items that he then pawned. Mack, 481 So.2d at 794. He never admitted to a burglary or theft, but he had told his girlfriend that he got the television, radio and lawnmower "from his mother." Id. That could mean that he got them with her permission and does not state that he entered his mother's home to get them. His mother testified that she had evicted her son and he had no authority to take anything. The effect of the defendant's statement on the need for a circumstantial evidence instruction was this:
Instructive of the defendant's conduct vis-a-vis the crime is Reed v. State, 229 Miss. 440, 91 So.2d 269 (1956) cited by the State. The Reed court defined an admission as a statement by the accused it may be direct or impliedof facts pertinent to the issue and [tending] in connection with other facts to prove his guilt. 229 Miss. at 446, 91 So.2d 269. Direct evidence of the crime is the evidence of an eye witness that it was committed. This includes in criminal law the confessions and admissions of the accused and dying declarations. Anderson [v. State, 246 Miss. 821, 828, 152 So.2d 702 (1963)].
The crux of Mack's argument seems to be that since there was no eyewitness who identified him as the person who broke and entered his mother's residence, this was necessarily a case of circumstantial evidence and, therefore, that he was entitled to the circumstantial evidence instruction. All else aside, there is evidence in this case from Van Marie Wise that Mack admitted to her that he obtained the lawnmower, television set and radio from his mother. While not a confession properly so-called, this evidence does constitute an admission.
Mack, 481 So.2d at 795. The opinion's most important statement for our purposes is that "the Keys court announced the rule to be that the instruction must be given only where the prosecution is without a *1196 confession and only without eyewitnesses to the gravamen of the offense charged. There is no reason in principle why an admission by the defendant on a significant element of the offense should not also operate to render unnecessary the circumstantial evidence instruction." Mack, 481 So.2d at 795. Any statement by the accused, whether properly labeled a "confession" or not, has the potential to end the need for a circumstantial evidence instruction. See McNeal v. State, 551 So.2d 151, 157 (Miss.1989)(stating the "rule set out in Keys was recently modified [in Mack] to include unwritten verbal admissions made to any lay witness").
¶ 23. It is important that in Mack none of the elements of the gravamen of the offense was proven by direct evidence. Mack's mother testified that property was taken from her house after someone broke in through a bedroom window and that her son did not have authority to enter her house. By adding in Mack's admission that he got the property from his mother, the inference became unavoidable that he committed the breaking and entering in order to get it. Mack itself stated that the gravamen of a burglary is 1) breaking and entering of a dwelling 2) with felonious intent to commit a crime. Mack, 481 So.2d at 795. There was no admission nor eyewitness testimony proving either element, but there was an admission relevant to both.
¶ 24. Putting additional meaning into Mack are the significant number of cases that have since cited to it. One involved a sexual battery. Woodward v. State, 533 So.2d 418, 419 (Miss.1988) (sentence later vacated because of defect in sentencing phase, Woodward v. State, 635 So.2d 805, 812 (Miss.1993)). The accused wanted a circumstantial evidence instruction as to the rape because he argued that there was no direct evidence of lack of consent for the intercourse. Id., 533 So.2d at 431. The court found that even if the confession could be interpreted as asserting that the act was voluntary, there still did not need to be a circumstantial evidence instruction because the sexual intercourse itself was proved by the confession. Id. The case was therefore not wholly circumstantial.
¶ 25. In a prosecution for attempting to tamper with a jury, the only evidence against one defendant, who was the son of another defendant, was that he made a photocopy of the jury list and that he was present when his father was talking about tampering with a third person who actually made contacts with jurors. King v. State, 580 So.2d 1182, 1191 (Miss.1991). "During the entire conversation, Johnny listened as his father schemed. Thus, Johnny knew what was going on; he fully comprehended the scheme being executed by his father." This evidence was described by the court as "a mixture of both direct and circumstantial albeit mostly the latter. This Court has held that, `where there is direct evidence of a crime, the circumstantial evidence instruction need not be given.' Gray v. State, 549 So.2d 1316, 1324 (Miss. 1989)." Id. Consequently no circumstantial evidence instruction was needed on the trial of the son. As the concurring opinion pointed out,
There is no evidence that the defendant was observed committing the gravamen of the charged offense nor evidence that he admitted the crime. There is no evidence that the defendant spoke to any juror. There is no eyewitness testimony that he agreed to do so or for anyone else to do so.
King, 580 So.2d at 1192 (Banks, J., concurring).
¶ 26. Finally, in a capital murder case in which the only eyewitness had seen the defendant force the victim unharmed into her own car but nothing of what occurred thereafter, the court still held that no circumstantial evidence instruction was needed. Conner v. State, 632 So.2d 1239, 1256 (Miss.1993), overruled in part (solely as to holding regarding polygraph test results), Weatherspoon v. State, 732 So.2d 158 (¶¶ 12-13) (Miss.1999). Exactly how the capital murder was charged is unclear, but *1197 the court stated that "murder, kidnapping, and robbery" needed to be proven. Conner, 632 So.2d at 1251. The eyewitness had given direct evidence on the kidnapping, but not on robbery or murder. Later on the same day as the abduction the accused bragged to another witness that he had killed someone. There was nothing further said, such as to the sex, age, or race of the victim or when the murder occurred. The court relied on Mack to hold that even though "Conner did not expressly identify [the victim], his statement nevertheless qualifies as direct evidence." Id. The testimony from the eyewitness who saw the victim forced into her own car and from the witness who heard Conner admit to killing someone, "obviates the need for Conner's circumstantial evidence instruction." Id. He had under Mack admitted to a significant element of the crime, namely to having killed someone, even if he had not confessed to killing this person. Perhaps this more clearly than any other case shows the import of Mack.
¶ 27. In these last two cases there was no admission nor eyewitness evidence that proved any element of the crime. Mack only requires an admission "on a significant element" of the crime even if that admission by itself does not prove that element. The total evidence proving the "gravamen of the offense" is therefore not entirely circumstantial. In King there was no direct evidence that one of the defendants had participated in the crime, only that he was aware of it. In Conner there was no direct evidence that the accused had done anything to this victim other than cause her to get into her own car with him and drive away. Thus for both it was circumstantial evidence, strong and compelling but circumstantial all the same, that filled in the gaps.
¶ 28. Before applying what we find to be the rule that grows out of this, it is important to keep proper perspective on the issue. None of this case law is addressing what has to be proven in order to convict; it is only clarifying when an accused is entitled to a supplementary jury instruction. In all events the jury is to be told that each element of the offense must be proven beyond a reasonable doubt. Whether the circumstantial evidence instruction provides any useful guidance to the jury or instead is just an appeal issue when it is denied, has been discussed in different supreme court opinions. See Keys v. State, 478 So.2d at 267 n. 4; Mack, 481 So.2d at 796 (Robertson, J., concurring); Stringfellow v. State, 595 So.2d 1320, 1322 (Miss.1992)(Pittman, J., concurring).
¶ 29. In the present case, the direct evidence provided by the victim herself proved everything other than the identity of the perpetrator. Like Conner and King, there was no direct evidence that the defendant had participated in the crime. In Conner, the defendant's admission of having killed someone was found adequate under Mack to be an admission of a significant element of the crime of killing the particular victim. Similarly, Price's own statements were that he was in the house and car within hours of the crime. That made much more definite in time the fingerprint evidence that existed. As in Conner, Price's admission made his guilt more likely though it did not admit to the crime. The fact that Price's explanation for being in the house could be rejected as incredible is important for sufficiency of evidence but not for the point here. The important consideration is that there was "an admission by the defendant on a significant element of the offense" that "render[s] unnecessary the circumstantial evidence instruction." Mack, 481 So.2d at 795.
¶ 30. So long as there continues to be a need to instruct the jury on circumstantial evidence, it would be preferable for the trial courts and the prosecution itself to err on the side of giving and not on the side of withholding the instruction. Here, however, we find no error. The instruction presumably was denied in part because *1198 the prosecutor immediately argued that this was not a circumstantial evidence case. Since the instruction merely recasts the normal reasonable doubt burden of proof, and indeed it is for that reason that a plurality on the supreme court has argued that it adds nothing useful to jury deliberations, the State should not so invariably object to its use.

Issue 4: Whether State made improper comments during its closing argument
¶ 31. Price asserts that twice during the State's closing argument, it referred to the defendant as a "monster." Failure of the trial counsel to object would normally waive this issue on appeal. M.R.E. 103. However, since Price asserts that his trial counsel was ineffective, we examine this issue to determine whether Price suffered any prejudice from the State's comments.
¶ 32. The first use of the term "monster" is fairly general. The State was saying that the victim was a woman living on her own and supporting herself, "so you can be very happy in that, and then along comes some monster and puts an end to this; to her hope and her dreams that she could get out on her own and make a living and live alone." We do not find that the use of the term in this context was likely to cause any meaningful prejudice.
¶ 33. The State's second use occurred while describing the attack upon the victim. The prosecutor said, "She thought she was going to die. This monster of a man had her leaning up on the front of her car and then he had anal sex with her."
¶ 34. The supreme court found that accusing a defendant of being a coward and a terrorist was not unacceptable given the facts. Gray v. State, 549 So.2d 1316, 1323 (Miss.1989). The court held "that in this case, a strong argument can be made that in this context of this case, the terms used by the prosecutor were accurate to describe the sort of person who calls someone up for the purpose of making harassing phone calls. Making harassing phone calls is a cowardly act, and this Court has upheld similar conduct by prosecutors in other cases." Id. Earlier cases had refused to grant new trials despite usage of such terms as "jackel," "thug," and even "butcher." Moss v. State, 208 Miss. 531, 538, 45 So.2d 125, 127 (1950); Wilcher v. State, 448 So.2d 927, 936 (Miss.1984) (sentence vacated because of death penalty instruction, Wilcher v. State, 635 So.2d 789, 791 (Miss.1993)).
¶ 35. What then, do we call a man who sexually batters a woman multiple times, kidnaps her, and throws her off of a bridge twice? Considering the facts, we do not find the use of the word "monster" to be reversible error. The testimony spoke more loudly than the closing argument as to the horror of this crime.

Issue 5: Ineffective assistance of counsel
¶ 36. Price maintains that he was ineffectively represented by counsel during his trial. The test for establishing ineffective assistance of counsel requires showing two things: 1) that the performance of defense counsel was deficient, and 2) that this deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The United States Supreme Court recognized that it was all too easy for a reviewing court to find error once the results of the trial are known. Id. at 689, 104 S.Ct. 2052. To avoid this, the Court held that determination of whether defense counsel's conduct was deficient is done with a strong presumption that counsel's actions were reasonable. Id. Regarding prejudice, the complainant must demonstrate "that, but for counsel's unprofessional errors," there was a reasonable chance that the results of the trial would have been different. Id. at 694, 104 S.Ct. 2052.
¶ 37. Price's trial counsel did not renew his motion for a directed verdict after putting on evidence nor move for a judgment notwithstanding the verdict after *1199 the jury had found Price guilty. This action waived his right to challenge the sufficiency of the evidence on appeal. Wetz v. State, 503 So.2d 803, 807-08 n. 3 (Miss. 1987). Because of this pending issue of ineffective assistance of counsel, we discussed evidentiary sufficiency above despite the waiver. That discussion reveals substantial, credible evidence of guilt and therefore no prejudice to Price resulted from the failure to file the motion.
¶ 38. Price's counsel also did not request a new trial. Unless allowing the verdict to stand would result in an unconscionable injustice, a motion for new trial will not be granted. Pierre v. State, 607 So.2d 43, 54 (Miss.1992). The matter of evidentiary weight is waived by the failure to move for a new trial. Jackson v. State, 423 So.2d 129, 132 (Miss.1982). As our prior recitation of the evidence reveals, there is no reason to conclude that this verdict was an unconscionable injustice. Therefore, again there is no prejudice to Price for his counsel's failure to file the suggested motion.
¶ 39. Price argues that there are limitations on what fingerprint evidence shows and that had trial counsel moved for a new trial the judge might have ruled favorably. We have already discussed the fingerprint evidence and note once again that it was not the only evidence against Price. In failing to establish adequate reason to believe the jury's verdict was against the overwhelming weight of the evidence, Price has failed to demonstrate that there is a reasonable likelihood that if counsel had moved for a new trial it would have been granted.
¶ 40. Price also complains that his counsel allowed an inordinate amount of leading questions on several occasions. Price does not direct us in the record to these instances and merely asserts that they happened. While we have found instances where leading questions were asked but no objection was offered, we cannot say they rose to the level of either unprofessional error or prejudice. A number of these occurred while the victim was on the stand. She was testifying about events which were no doubt very difficult for her to discuss. Defense counsel may well have thought such leading was permissible as necessary to develop the victim's testimony. M.R.E. 611(c). Counsel may also have been balancing the risk that making it harder for the victim to testify might gain sympathy for the victim more readily than it would affect the ultimate quantum of evidence.
¶ 41. Price's contention that counsel failed to object to improper closing arguments appears to refer to the fact that counsel did not object either of the two times that the State utilized the word "monster." We have already determined that use of that term was not reversible error. Getting into a debate as to whether this was a monstrous act might not have been beneficial.
¶ 42. It is alleged that counsel failed to conduct an adequate voir dire. This is rooted in counsel's failure to ask the jurors whether any of them, their immediate family members or friends had been the "victims of sexual attacks, or crimes in general." However, the State had already asked "Have any of you ever had family members who have been the victims of a crime of this type?" This was after the court inquired whether any of the jurors were related to, or friends with, the victim. Thus, the questioning trial counsel failed to conduct would have been redundant. Conner v. State, 684 So.2d 608, 613 (Miss.1996). Deciding what questions to ask during voir dire is left largely up to the attorney. It is a matter of trial strategy. While defense counsel's voir dire was relatively short, we cannot say his voir dire of the jury pool was so inadequate as to constitute either unprofessional error or prejudice, let alone both.
¶ 43. Price continues that counsel, without objecting, allowed a witness to testify about a similar offense for which Price had been arrested, perhaps as a juvenile. *1200 Defense counsel himself asked the question of the chief of police in an apparent attempt to emphasize that the police had very little initially to make them believe Price was the perpetrator. He then asked if Price had "ever been involved in a sexual assault?" The witness said that he had and had been sent to Parchman. Since Price later testified, it could be that part of counsel's tactics was himself to raise a prior conviction that might have been offered as impeachment. M.R.E. 609. Whatever definite purpose may have been involved, hindsight analysis does suggest the question was counterproductive. Whether it was deficient under the broad discretion granted defense attorneys is more problematic. Moreover, considering the strength of the evidence against Price, we do not find any prejudice.
¶ 44. Finally, Price in one sentence in his brief argues that counsel should have produced medical records concerning the outcome of a psychiatric exam. All we know about that is a pre-trial motion was filed by this allegedly deficient counsel to have an exam and an order for it was granted. We can speculate as to a range of reasons why nothing more appears about the exam. Some of those reasons might prove ineffective assistance of counsel and others would not. On this record, we cannot determine anything about this point. State statutes provide an opportunity to develop a record and present claims on issues such as this, but the direct appeal of the conviction is not the place.
¶ 45. We find no constitutionally deficient counsel.
¶ 46. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY OF CONVICTION OF COUNT I KIDNAPING, AND COUNT III SEXUAL BATTERY AND COUNT IV SEXUAL BATTERY, AND SENTENCE OF LIFE AS A HABITUAL OFFENDER, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YAZOO COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, AND MOORE, JJ., CONCUR.
THOMAS, J., CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY BRIDGES, DIAZ AND PAYNE, JJ.
THOMAS, J., concurring:
¶ 47. Although the majority has written an interesting opinion, it has taken a tortured path to circumvent the need to grant the circumstantial evidence instruction requested in this case. The very Mississippi Supreme Court cases cited by the majority make it crystal clear that without a confession, eye witness testimony or an incriminating admission by the defendant, the trial court is in error for failing to grant a circumstantial instruction.
¶ 48. However, given the force of the State's case and the ludicrous defense put on by Price, I believe the jury in this case would have found guilt even if they had been instructed that the State's burden was to prove its case beyond all doubt. In view of that, I would hold the failure to grant the circumstantial instruction was harmless error. As such I concur with the affirmance of the conviction.
BRIDGES, DIAZ, AND PAYNE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.