748 So.2d 780 (1999)
William C. BRYANT a/k/a William Curtis Bryant a/k/a William Curtis Bryant, Jr., a/k/a William `Chip' Bryant, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00541-COA.
Court of Appeals of Mississippi.
April 20, 1999.
Rehearing Denied July 27, 1999.
*783 Edward Dudley Lancaster, Houston, William Wayne Housley, Jr., Tupelo, Attorney for Appellant.
Office of the Attorney General by Deirdre McCrory, Attorney for Appellee.
BEFORE THOMAS, P.J., LEE, AND SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. This is an appeal from a conviction for commercial burglary. We reject all ten of the defendant's assignments of error and affirm.

FACTS
¶ 2. Sarah and Bobby Childress were the operators of a pharmacy in Houlka. It was burglarized on the night of February 6, 1997, or early the next morning. Evidence indicated that entry was by means of a pick-up truck being driven through the rear door of the pharmacy. Several footprints were also found at the scene including at least one on the pharmacy's rear door. The truck was stolen and had been left at the scene.
¶ 3. Later in the morning after the burglary, law enforcement officers serving an unrelated chancery court commitment writ on the defendant "Chip" Bryant, took him into custody for transportation to a mental health center to undergo a mental evaluation. The reason for the mental evaluation was not revealed to the jury. Bryant was at the house of his father, Curtis Bryant. At least one officer indicated that they were already suspicious of the defendant, since they told his father about the burglary and another officer remained in the house, with the permission of Curtis Bryant to "look any way we wanted to" for evidence about the burglary. While there, one of the deputies saw a pair of boots with distinctive soles that he thought resembled the boot-prints at the scene of the Houlka Pharmacy burglary. The boots were seized and taken to an officer at the scene of the pharmacy burglary. Chip Bryant, who was not then charged with the burglary, was given notice of his constitutional rights under Miranda v. Arizona and transported to the mental health facility.
¶ 4. Responding to an anonymous tip, several officers returned to Curtis Bryant's house a week after the burglary. The defendant's brother, Jimmy Bryant, answered the knock at the front door, saw the officers, then ran to the back and threw a bag in the refrigerator. Two deputies testified that permission to search the house was granted by the father, Curtis Bryant. This search discovered two plastic bags containing contraband drugs. One bag was in the refrigerator, and the other was in the attic. The drugs were later identified as being from the Houlka Pharmacy.
¶ 5. The defendant Chip Bryant left the medical facility to which he had been taken for mental evaluation. A sheriff's deputy testified it was his understanding that Bryant had escaped. Bryant was found in Alabama. Chickasaw County deputies returned him to Mississippi were he was charged with the burglary. After a two day trial, Bryant was convicted and given a seven year sentence.

DISCUSSION

Issue 1: Circumstantial evidence instruction.
¶ 6. No circumstantial evidence instruction was given, but none was requested. Bryant argues that this should be treated as plain error harmful to his fundamental rights. The instruction would, in relevant part, have been that the jury could not convict unless it excluded every reasonable hypothesis consistent with innocence. See, e.g., Flanagin v. State, 473 So.2d 482, 485 (Miss.1985).
¶ 7. Bryant properly refers to case law that a circumstantial evidence instruction is needed when there are no eyewitness to the crime and the defendant does not confess. Keys v. State, 478 So.2d 266, 267 *784 (Miss.1985). The court's statement was this:
It is the law in this state that, where the evidence for the prosecution is wholly circumstantial in nature, the accused is entitled upon request to have the jury instructed that, before they may convict, they must find that each element of the offense has been established beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. There is, to be sure, loose talk in some of our cases to the effect that the circumstantial evidence instruction must be given where only one of the elements of the offense charged is established circumstantially. A correct statement is that the instruction must be given only where the prosecution is without a confession and wholly without eye witnesses to the gravamen of the offense charged.
Id. (citations omitted).
¶ 8. We find that the defendant's failure to request such an instruction is fatal to the issue on appeal. M.R.E. 103(a). Even were we to agree that the issue was not waived, the result would not vary since the brother of the defendant testified that William "Chip" Bryant confessed to the crime. That is, evidence of an admission by the defendant obviates the need to give a circumstantial evidence instruction even if requested. Anderson v. State, 246 Miss. 821, 828, 152 So.2d 702 (1963).
¶ 9. Just as important to any plain error analysis, the benefit of a circumstantial evidence instruction has been tellingly criticized. Montgomery v. State, 515 So.2d 845, 852 (Miss.1987), Robertson, J., joined by three justices, concurring. Not to give an instruction of uncertain benefit cannot be viewed as plain error affecting the fundamental fairness of the trial.

Issue 2: Foundation for admitting photographs.
¶ 10. The defense argues that certain photographs taken of the crime scene should not have been admitted for several reasons. First is a question over the chain of custody, second, that the person with personal knowledge of the photographs did not testify, and third, that the probative value of the pictures was outweighed by their potential for prejudice.
¶ 11. There is no allegation that the photographs were tampered with in any way. Proof of the chain of custody is intended to satisfy the fact-finder of the identity and validity of evidence. Without doubts being raised, a break in the chain does not bar introduction. Wells v. State, 604 So.2d 271, 277 (Miss.1992).
¶ 12. Secondly, the actual photographer need not authenticate a picture if another person with adequate personal knowledge testifies that the picture is accurate. Id. Deputy Porter, with knowledge of the appearance of the drug store after the burglary, testified as to the authenticity of the photographs. That is adequate.
¶ 13. Finally, the photographs entered into evidence were not inadmissible as being cumulative. "The mere fact that a photograph may be cumulative of other evidence does not extinguish its probative value." Tubbs v. State, 402 So.2d 830, 836 (Miss.1981). There was nothing in these pictures of a broken wall, dented truck, refrigerator with drugs, and other scenes that would have inflamed the passions of the jury. Though some of the pictures represented the same scene as other photographs, they did so from different angles. Even if some could be labeled "cumulative," there was no prejudice. Needlessly repetitious photographs of a gruesome crime scene might create error, but the multiple pictures in this case did not.

Issue 3: Directed verdict, judgment notwithstanding the verdict, or new trial.
¶ 14. We introduce the issue here of the adequacy of the evidence since Bryant *785 makes it his third issue on appeal. A proper evaluation of the arguments requires a determination of whether certain evidence, the admissibility of which is analyzed in response to later issues, can be considered. We analyze the adequacy premised on our later holding that this questioned evidence was admissible.
¶ 15. Motions for a directed verdict or judgment notwithstanding the verdict challenge the legal sufficiency of the evidence. Such motions should be denied if there is enough evidence to present a factual question over "which reasonable jurors could disagree." Vines v. Windham, 606 So.2d 128, 131 (Miss.1992). Motions for a new trial ask a different question and will "be granted if the jury's verdict so contradicts `the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.'" Pierre v. State, 607 So.2d 43, 54 (Miss.1992) (quoting Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983)).
¶ 16. There is no legitimate question on appeal that a burglary occurred, that it was accomplished by backing a truck into the back wall, and that drugs were taken. The only relevant question is whether the defendant participated in the crime. In our view that largely depends on whether a boot mark on the ground and on a door that had been knocked down during the break-in matched the imprint made by Bryant's boots, and on the credibility of the defendant's brother saying that Bryant admitted to the offense. As will be discussed subsequently, we find no error on issues regarding the boot evidence or the confession. Consequently, there was adequate evidence to withstand motions for a directed verdict and for a new trial.

Issue 4: Admission of hearsay evidence
¶ 17. The defense argues that the testimony of Deputies Porter, Myers, and Ward, along with that of Mrs. Sarah Childress, "was tainted with hearsay remarks throughout" and should have been excluded. There is no identification of the comments that allegedly are hearsay. Nevertheless, we have reviewed the testimony of the four witnesses. It appears that the alleged hearsay was the statements proving that the defendant's father consented to a search of the home, at which time the bags of drugs were found. It is true that the sheriff, Jimmy Simmons, did not testify. He is the person who apparently spoke with the defendant's father Curtis Bryant and got permission to search. The burden is on the prosecution to prove consent if it is on that basis that a search is to be justified. A finding of consent, voluntarily given, arises from a review of the totality of the circumstances. Jackson v. State, 418 So.2d 827, 830 (Miss. 1982).
¶ 18. As to what is needed for consent, Bryant discusses a case that held consent is not valid unless it is shown that the consenting party knew that he had a right to refuse. Penick v. State, 440 So.2d 547, 550 (Miss.1983). That holding has been limited in the intervening years:
The Penick knowledgeable waiver test was limited by this Court in Jones v. Mississippi Dept. of Public Safety, 607 So.2d 23 (Miss.1991), where the defendant did not claim that "his consent was not knowledgeable." Jones, 607 So.2d at 28. Jones states that "[t]he State is not required to demonstrate knowledge" but rather the "burden is on the defendant to show impaired consent or some diminished capacity." Jones, 607 So.2d at 28 (emphasis added). Jones limits Penick's knowledgeable waiver requirement to only those cases where the defendant specifically claims that his or her consent was not knowledgeable.
Graves v. State, 708 So.2d 858, 863-64 (Miss.1997). It is the father Curtis Bryant's diminished capacity or "impaired consent" that had to be raised by the defendant before the State was required to *786 respond with evidence to the contrary. No such initial showing was made.
¶ 19. A different and significant issue is whether consent itself was directly proven or only by hearsay. If indeed no one ever testified from personal knowledge that consent was given, and perhaps the best witness of consent would have been the sheriff, a defect in the proof would exist. The sheriff did not testify, but he was not the only possible witness with first-hand knowledge. Two officers testified relevant to the search. Their accounts are similar. Both deputies stated that four law enforcement officers arrived that day at Curtis Bryant's house. These men were Sheriff Simmons, Deputy Porter, Deputy Myers, and Deputy Ward. Deputies Myers and Porter testified that Myers went to the back of the house. Myers claims Ward came around to the rear of the house while Porter says Ward went to the side of the house, but the important point is that both versions still left the sheriff and Porter together. Jimmy Bryant, brother of the defendant, let the sheriff and Porter into the house where they were met by the defendant's father, Curtis Bryant. Deputy Porter on the witness stand did not quote the sheriff that permission had been given, which would be hearsay. Porter testified that Curtis Bryant "came up and gave us permission to search any way we wanted to." A few sentences later he again states that Curtis Bryant gave them permission to search.
¶ 20. Deputy Myers indicated the sheriff talked with Curtis Bryant and then informed "us" there was permission to search. Who the "us" was is not specified, but more importantly, Myers went on to say that the elder Bryant continued to tell them to "search good." Porter's evidence was from direct, personal knowledge of permission being granted by someone with authority to do so. Myers's statement of the senior Bryant's encouragement of the search was also from first-hand knowledge.
¶ 21. Bryant argues that the absence of a written consent form left the factual question more open than is often the case. Still, adequate evidence was introduced. Officer Porter testified that he heard Mr. Bryant grant consent. Whether the words Bryant spoke were the ones he meant, the truth that is being asserted by the testimony is only that the consent was given.

Issue V: Sufficiency of the evidence.
¶ 22. Bryant has already attacked the legal sufficiency when he raised in an earlier issue the failure to grant a directed verdict. We continue to defer certain legal issues regarding the admissibility of key evidence to prove Bryant's connection with the crime. We will summarize the evidence, though.
¶ 23. Jimmy Bryant testified that his brother, the defendant Chip Bryant, confessed to commission of burglary of a drug store. It was for the jury to judge his credibility. When the defendant was being fingerprinted, he asked how he could be charged with stealing a truck, apparently meaning the one that was used in the burglary. He said "I think all you can charge me with is unauthorized use of a motor vehicle." The admissibility of that statement is the next issue we will address.
¶ 24. The State established through testimony and photographs that a truck was used to break into the Houlka Pharmacy. The State also proved through the testimony of Mrs. Childress that the drugs seized at Curtis Bryant's house belonged to the Houlka Pharmacy. Other testimony indicated that the defendant stayed with his father when he was in town. The evidence was sufficient to prove each element of the offense and to sustain the judgment of the jury.

Issue 6: Admission of defendant's statement.
¶ 25. During the trial, the judge conducted a hearing out of the presence of the jury. Two officers were questioned *787 about a statement made by the defendant while he was being booked. The deputies relayed similar stories. Deputy Ward stated:
A. Well, what he done, he asked me a question. He asked me, he said, "How could you charge me with stealing that truck"; and I told him, I said, "Well, when you took the truck and carried it over there and rammed it into that building, you didn't have permission to do so by Randy Wilson"; and I said, "To me that's stealing a truck." He said, "Well, I think all you can charge me with is unauthorized use of a motor vehicle." You know, that's the statement he made to me; and I just told him, you know, the jury would have to decide that.
Deputy Porter overheard the conversation and stated:
A. Like I said, my desk, when you go in my office, I'm to the left; and they was to the right; and Terry was, I believe, filling out an arrest report or something. Like I said, I didn't have any part in that He was taking all the information, but I heard Chip ask him how come he charged him with burglary of an automobile; and Terry said, Because I feel like that yousomething, it may not be just exactly the words because I feel like you used that automobile and you took it around there and used it to break into the drugstore.
BY MR. LANCASTER: Objection to hearsay.
BY THE COURT: Overruled.
A. Chip said, "I don't see how you could charge me with burglary. You might charge me with unauthorized use of a motor vehicle, but not burglary."
Terry told him that that's what he charged him with and he was going to let the grand jury decide on all that.
¶ 26. The defense argues that this statement was given in the absence of warnings about his constitutional rights and after he had invoked his right to counsel. It is unclear whether Bryant had in fact invoked his right to counsel at some earlier point or whether he had been given his rights warnings while in custody in Alabama. However, we find both issues irrelevant. Bryant was not being interrogated. It was he who initiated the conversation, not law enforcement officers.
¶ 27. Bryant argues that Deputy Ward was cleverly baiting him into responding with an incriminating statement. While this is possible, there is no evidence of such a motive nor is it the only or even most likely explanation. The trial judge overruled the objection without stating any findings, but he necessarily found the statement not to have been in response to interrogation. We find no error in reaching that conclusion based on this testimony. The first statement was an unsolicited comment by Bryant, to which Deputy Ward gave an answer, following which Bryant made one comment too many for his acquittal. Invoking the right to counsel does not protect an accused who volunteers a statement. Edwards v. Arizona, 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The request for counsel applies only to custodial interrogation. Rhode Island v. Innis, 446 U.S. 291, 299, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
Bryant asks that we change this rule and hold that no statement can be introduced from a suspect to whom warnings of constitutional rights have not been given. We decline to do so. The constitution protects an accused against being "compelled in a criminal case to be a witness against himself...." U.S. Const., amend. V. There has been much elaboration on the meaning of those simple words, but the United States Supreme Court has continued to interpret "compelled" in a common sense fashion. Volunteering information is not compulsion. "[S]ince the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *788 should have known were reasonably likely to elicit an incriminating response." Innis, 446 U.S. at 301-02, 100 S.Ct. 1682.
¶ 28. The evidence adequately supports that this was volunteered information, unprompted by the equivalent of interrogation.

Issue 7: Testimony of Jimmy Bryant.
¶ 29. Jimmy Bryant's credibility is first and foremost a jury question. Pleasant v. State, 701 So.2d 799, 802 (Miss. 1997). He testified that while his brother was at the medical center for evaluation, and the defendant was taken there the morning after the burglary, he confessed to the burglary of "a drugstore and he wanted me to bring him some drugs." The defendant does little more than claim that Jimmy Bryant's testimony was "incredible" and that it was error to have relied upon it since Jimmy Bryant did not personally witness the events. Jimmy Bryant himself is said to be the most likely burglar and that he falsely accused his brother. That is a possibility, but one that the jury was to evaluate and not this appellate court.
¶ 30. Evidence seldom paints a complete picture. While juries may not speculate to fill evidentiary gaps, they may draw reasonable inferences from the evidence presented to them. Hooker v. State, 716 So.2d 1104, 1110 (Miss.1998). The fact that Jimmy Bryant was testifying in exchange for avoiding prosecution goes to the credibility of his testimony, not its admissibility. The defense claims such testimony can only be considered if the jury is instructed that the information is to be viewed with caution. No authority for this proposition is cited nor do we find such a requirement. Instead, such a principle applies to testimony from accomplices. Burke v. State, 576 So.2d 1239, 1242 (Miss.1991). Regardless, there was no instruction requested that other suspect's testimony must be viewed with caution, and the matter is waived.

Issue 8: Admissibility of boots and drugs
¶ 31. Our conclusions regarding the proof of consent to search Curtis Bryant's house, which are outlined in issue number four, necessarily also result in the fruits of that search being admissible. The drugs found in the attic and refrigerator, identified at trial as being from the pharmacy, were therefore properly presented to the jury.
¶ 32. The earlier seizure of the boots when officers were serving the commitment writ on the defendant presents a different question. To repeat the facts, when that commitment writ was being served, an officer noticed some boots that Curtis Bryant purportedly said belonged to his son the defendant. When the elder Bryant testified, he said he had actually told the officer that he did not know whose boots they were. The reasons for the officer's suspicion were never articulated at trial, but the officer seized the boots at that time. We divide our examination into three parts. First is whether the error was properly preserved for appeal. Secondly, we must decide if there is a reasonable expectation of privacy involved. Finally, if so, the actions of the deputies must then be analyzed to determine if they violated that expectation.
¶ 33. On the first issue, no motion to suppress the boots was ever made. Bryant stated no objection to the admission of the boots at the time that they were offered into evidence. That constitutes a procedural bar to raising the issue here. We continue to examine the issue, however, since the failure of trial counsel to seek suppression of this evidence is raised as evidence of ineffective assistance of counsel. The admissibility of the boots is relevant to that inquiry.
¶ 34. Resolving an initial matter, we find that a sufficient predicate was laid to establish the house searched belonged to Curtis Bryant. This was done through *789 the testimony of Deputy Porter that he had known Curtis Bryant for many years and knew the house belonged to Mr. Bryant. Rawson v. Blanton, 204 Miss. 851, 854, 35 So.2d 65, 66 (1948).
¶ 35. Deputy Porter testified that Chip Bryant stayed at his father's house when he was in the area. Indeed, he had been brought by family members to Curtis Bryant's house from the house where Jimmy Bryant was staying and had been there approximately two days when the deputies arrived. He slept on the couch most of the time though there was also a bed he used.
¶ 36. Curtis Bryant made it clear that the boots were not given to the deputies but that deputy Porter simply took them. Deputy Ward actually seized the boots when he saw them next to the bed in which the officers found Chip Bryant. Ward then handed the boots to Porter.
¶ 37. Deputy Porter testified that when they arrived to get Chip Bryant, the following occurred: "We was informed that he [Chip Bryant] was already up, and at that time I advised him [Curtis Bryant] about the drugstore, and we was told to go ahead and get him out of the house and look anyway we wanted to, so that's what we did." By Curtis Bryant's consenting to search the house, it did not matter whether there was probable cause that would have permitted a warrant. There was no evidence as to the reason that Bryant was suspected, but with consent such evidence becomes irrelevant for the validity of the search.
¶ 38. Once the owner of the house gave consent to the search, even if his son stayed at the house when he was in town, that is sufficient. All people with interests in the home need not consent; one is enough. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Being validly in the house, the officer found the boots. The owner of the boots, the defendant, was not asked if they could be taken. There was never any proof of whether the officer knew enough about the boot marks on the pharmacy door to have probable cause that these were the correct boots. Perhaps he did, but the record is silent. There may have only been a suspicion, even a reasonable suspicion. Had a motion to suppress been made, further evidence as to why these boots were so suspicious might have risen to the level of probable cause. On this record, though, we find inadequate evidence. Of course, it is the State's burden to prove a proper seizure only once the issue is raised.
¶ 39. We need not examine such doctrines as "plain view." Ferrell v. State, 649 So.2d 831, 834 (Miss.1995). The question is not whether the police properly saw the boots; it is whether they had a sufficient basis to believe that they were evidence of a crime. This situation should be distinguished from another precedent in which there was probable cause to believe that the particular suspect was the culprit. Brown v. State, 690 So.2d 276, 285 (Miss. 1996). In Brown, there were shoe-prints at the crime scene that would help identify the perpetrator. The defendant's shoes were in plain view on the floor near a table. Id. Therefore, having an adequate basis to believe Brown's guilt, there was probable cause to believe his shoes were incriminating evidence that could be seized.
¶ 40. No equivalent link is demonstrated with regard to Chip Bryant. The deputies went to get Bryant because of the chancery court writ and not because they had evidence linking him to the burglary. It is evident, though, that they were suspicious of Bryant regarding the burglary. Considering the near-silence in the record that he was even suspected, we will not assume that the reasons for the suspicions amounted to probable cause.
¶ 41. The father's consent to search indicates that the officers were where they had a legal right to be when they saw the boots. Since there was never any evidence of the suspicions regarding Bryant, seizure of his boots must be justified on the same *790 basis as the seizure of the boots of someone else who otherwise was totally unconnected with the crime. If an officer had stopped someone for a traffic offense miles and hours from the burglary, asked the person to get out, and noticed some similarities between the footprints that the driver made and those at the burglary, could those shoes be seized just on suspicions?
¶ 42. We find an answer to this question in a decision from the United States Supreme Court. Police were validly inside an apartment as an emergency exception to the warrant requirement, since they were investigating the firing of a bullet from that apartment through the floor to the apartment below. Arizona v. Hicks, 480 U.S. 321, 323, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). While in the apartment on that justification, some electronics equipment was seen that the officer suspected was stolen. He moved the equipment enough to see the serial number, which was not in plain view without the slight movement. As a result the property was seized. The court said any movement of property ended the plain view justification and had to be supported by something else. There was, in other words, no de minimis search technique. The evidence either is in plain view or discovering it is a search. The State conceded that the officer had only a "reasonable suspicion" that the property was stolen. Id. at 326, 107 S.Ct. 1149. The court said that was insufficient. Even though a warrant was not necessary to be in the apartment since exigent circumstances allowed it, the seizure required more.
Dispensing with the need for a warrant is worlds apart from permitting a lesser standard of cause for the seizure than a warrant would require, i.e., the standard of probable cause. No reason is apparent why an object should routinely be seizable on lesser grounds, during an unrelated search and seizure, than would have been needed to obtain a warrant for that same object if it had been known to be on the premises.
Id. at 327, 107 S.Ct. 1149. Without probable cause or some applicable exception to its need, there could be neither a search nor a seizure.
¶ 43. We can not tell if seizure of the boots was based on a hunch, on something unique about the soles that created probable cause when they were discovered, or on something in between. Since it is the State's burden to justify the seizure once the issue is raised, the question of counsel's possible ineffectiveness in not raising the point remains open. That we consider next.

Issue IX: Ineffective assistance of counsel.
¶ 44. The test for ineffective assistance of counsel is well established.
In a case that involves ineffective assistance of counsel, the test that governs is that which was set out by the U.S. Supreme Court in the case of Strickland v. Washington [466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)]. This test has been adopted by this Court, and governs in this case. In order to prove that counsel was ineffective a defendant must show 1) counsel's performance was deficient, and 2) the deficiency prejudiced the defense. Both parts of this test must be met for defendant to prove ineffective assistance of counsel. There is also a presumption that trial counsel is competent, and that counsel's conduct is reasonable.
Lindsay v. State, 720 So.2d 182, 184 (Miss. 1998) (citations omitted).
¶ 45. Bryant cites five reasons why his right to effective representation was violated.
¶ 46. First was his attorney's failure to object timely to the introduction of the boots and the drugs. The drugs were validly admitted, as we have already discussed, because they were seized as incriminating evidence during a valid consent *791 search. The seizure of the boots cannot be found valid based on this record since there is inadequate evidence of probable cause to believe that they were evidence of a crime.
¶ 47. Under the standard for measuring ineffectiveness, we must ascertain whether trial counsel's failure to move for suppression was deficient performance. Two critical pieces of evidence tended to link Chip Bryant directly with the burglary. First was the testimony of Jimmy Bryant about a confession by the defendant. The boots were the other evidence tying the defendant to the crime. The evidence was too important for failure to move for their suppression, if in fact they were not properly seized, to be considered anything other than deficient. What we cannot assume, though, is what the proper result of a suppression hearing would have been. That cannot be analyzed because the reason for the seizure was so poorly explained. There is a reasonable suspicion, though, that the prosecutor did not believe there to be probable cause. Had there been additional incriminating evidence that proved probable cause, presumably that would have been introduced in some way. That is only a suspicion however.
¶ 48. The second issue under the standard for reviewing trial counsel's performance requires a determination of whether prejudice resulted from the defective performance. Since we cannot know what evidence would have been introduced at a suppression hearing regarding how much the police knew about the boot print, we cannot hold that definitely the boots would have been found inadmissible. Since the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," Strickland, 466 U.S. at 694, 104 S.Ct. 2052, our inability on this record to determine that is fatal to the issue of ineffectiveness, at least on direct appeal.
¶ 49. "The totality of the evidence before the judge or jury should be considered in assessing whether there was prejudice, not just the factual findings which are affected by error." Leatherwood v. State, 473 So.2d 964, 969 (Miss.1985). Even without the boots, there is still significant evidence that incriminates Chip Bryant. His brother testified that Chip confessed to the crime. Chip Bryant made an arguably incriminating statement while being booked. The drugs found in the house in which Bryant was staying were identified as coming from the drug store. True, Jimmy Bryant's interest in shifting blame if he himself were the culprit had to be weighed by the jury. Drugs being in the house also could implicate others such as Jimmy Bryant. That again would be the jury's choice.
¶ 50. Considering all the circumstances, there is not a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."
¶ 51. The next alleged ineffectiveness is the absence of a circumstantial evidence instruction. We have already determined in issue one that no such instruction was necessary even if requested, and thus failure to request one caused no prejudice.
¶ 52. Next it is argued that Bryant's trial counsel failed to cross-examine either Officers Ward or Porter when they testified outside the presence of the jury about the statement made during the booking of Chip Bryant. Failure to cross-examine, by itself, does not evince prejudice or mistake. There is no suggestion of what cross-examination would have accomplished. Bryant alleges that his attorney would not allow him to testify at the suppression hearing, but that is not supported by Bryant's reference to the record. All we know is that he did not testify. We find no evidence of deficient performance from this.
¶ 53. In one sentence it is next alleged that trial counsel failed to prepare the defendant's father Curtis Bryant adequately *792 for his testimony. What could have been avoided by better preparation is not suggested, nor is there any evidence of how much preparation was attempted. This does not show inadequate performance.
¶ 54. Next, Bryant's counsel argues that there was a failure timely to include in discovery the potential witness, Maxine Bryant, who was not allowed to testify. There was no proffer of her testimony. Mrs. Bryant is Curtis Bryant's wife. There still is no indication on appeal of what Mrs. Bryant might have said. There is consequently no manner in which to evaluate the effect of failing to call her or proffer her testimony. We will not speculate.
¶ 55. We find no merit to these allegations of deficient performance.

Issue X: testimony regarding the boot print on the pharmacy door
¶ 56. The testimony of Deputy Porter regarding the boots was the subject of a number of objections. The focus was that Porter was not an expert but was nevertheless testifying as one. Porter was not presented as an expert. His opinions, then, while admissible, are restricted to those "(a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact at issue." M.R.E. 701.
¶ 57. There was testimony that the same day as they were seized, the boots were taken to the drugstore, There an officer, with the boots literally in hand, compared them to what was on the ground. There were "boot tracks all over the place that appeared to me to be made by these boots." There was no objection. By being at the scene, which is more direct than a view of photographs available to the jurors, the officer was stating an opinion rationally based on his perceptions and which was helpful. The ultimate decision still was for the jury.
¶ 58. The officer made the firm statement that these boots made the prints at the pharmacy. Thus the conclusion was admitted without objection. Later he just made a comparison, such as saying that the prints were similar to the boots. There is no prohibition regarding testifying as to the ultimate issue. As another rule states, lay or expert testimony otherwise properly admitted "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." M.R.E. 704. Though whether these boots were the ones that made the imprints around the store was not an ultimate issue, we find Rule 704 instructive on whether the officer was barred from making the firm statement that the boots made the imprint. We find no such prohibition.
¶ 59. A close example was permitting as lay witness opinion testimony an investigating officer's conclusion that she "did not perceive any evidence which indicated that the car had spun in a circular motion before hitting the pole." Seal v. Miller, 605 So.2d 240, 244 (Miss.1992). This testimony "is rationally based on her observations at the scene." Id. Here the officer at the scene perceived the existence of something instead of the nonexistence, but it nonetheless is a similar lay opinion based on personal observations, helpful to the jury.
¶ 60. The deputy later testified more about the boots and the prints.
Q. Did you compare those boots to any prints that were made around
A. Yes, I have.
Q. outside?
A. Yes, I have.
Q. Did you notice anything peculiar about those boots?
BY MR. LANCASTER: Your honor, we ask for a predicate to be laid for this comparison.
BY THE COURT: Overruled.
Q. Was there anything specific about these boots that indicated to you that there was a similarity?

*793 A. Yes. I think if you look at the heel, the footprint of them, and compare them with them pictures, look close at the different sizes of the notches on each side of the boots, there is a difference.
Q. I would like for you just to describe rather than make some conclusion as to whatyou know, I don't want any conclusion. What I'm asking you about is the specifics of those boot lugs. Is there anything you can show the jury on them specifically?
A. Yes, sir, I feel like I can.
Q. Can you take those out and show us what you're talking about?
A. I'll need the picture to match them.
¶ 61. A bench conference was then held in which the prosecutor made clear he was not attempting to obtain any conclusions from the witness but merely wanted him to show the jury what was on the bottom of the boot. Trial counsel responded "only an expert can reach an ultimate fact in issue. Used to an expert couldn't even do that. He can make a comparison. That's it." The prosecution responded: "I've instructed him to stay away from that. I just wanted him to show us a specific lug." The court found that it was for the jury to reach conclusions and upheld the defense objection.
¶ 62. Bryant's present assertion that Deputy Porter was allowed to continue testifying over trial counsel's objection that the deputy was not competent to make a comparison is not supported by the record. Rather, Bryant's trial counsel said the deputy could make a comparison but not a conclusion. We find no conclusion being stated other than the very first statement from the officer that we have quoted above, namely, that the prints on the ground were made by these boots. We have found that a valid and admissible conclusion.
¶ 63. After the bench conference, the deputy's testimony continued:
Q. Mr. Porter, is there anything on the bottom of those boots.
A. We have several prints, probably the same footprint. If you will
Q. The jury can compare those on their own since you're not an expert in footprints, but is there anything specifically on the bottom of the other boot?
A. Not nothing that I can swear to. It appeared that way, but I don't have a plain picture.
Q. What's in the bottom of that boot?
A. It's a tack.
Q. Did you see anything that indicated an indication?
A. I saw one track in there that I thought appeared to be made by the tack, but we don't have
BY MR. LANCASTER: Objection, speculation, not an expert.
BY THE COURT: Overruled. He testified he said he thought.
¶ 64. The trial judge had shortly before ruled Deputy Porter could not testify the tack made the indentation but he could say that there was an indentation. Deputy Porter's testimony here was constantly qualified by statements that it was what he "thought." We find no error.
¶ 65. Bryant's present argument that other investigators similarly made statements beyond their competence is not further explained in his brief. Counsel then argues that Porter's testimony about the boots had the effect of shifting the responsibility for deciding the facts from the jury to the witness by essentially telling the jury how the case should be decided. We cannot agree. Lay opinion is permitted under the requirements of Rule 701. It was made clear that Porter was not testifying as an expert.
¶ 66. THE JUDGMENT OF THE CIRCUIT COURT OF CHICKASAW COUNTY OF CONVICTION OF BURGLARY AND SENTENCE OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI *794 DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO CHICKASAW COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
IRVING, J., DISSENTS WITHOUT WRITTEN OPINION.